*2 Per Curiam.
The opinion of the Court in Jackson v. Virginia, 443 U. S. 307 (1979), makes clear that it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury’s verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was “objectively unreasonable.” Renico v. Lett, 559 U. S. 766, 773 (2010) (internal quotation marks omitted).
Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold. The Court of Appeals in this case substituted its judgment for that of a California jury on the question whether the prosecution’s or the defense’s expert witnesses more persuasively explained the cause of a death. For this reason, certiorari is granted and the judgment of the Court of Appeals is reversed.
⅜* ⅜ ⅜
This case concerns the death of 7-week-old Etzel Glass. On November 29,1996, Etzel’s mother, Tomeka, put Etzel to sleep on a sofa before going to sleep herself in another room. Respondent Shirley Ree Smith — Tomeka’s mother — slept on *3 the floor next to Etzel. Several hours later, Smith ran into Tomeka’s room, holding Etzel, who was limp, and told her that “ [something [was] wrong with Etzel.” Tr. 416. By the time emergency officials arrived, Etzel was not breathing and had no heartbeat. Smith reported that she thought Etzel had fallen off the sofa. The officials’ efforts to resuscitate Etzel failed.
Doctors initially attributed Etzel’s death to sudden infant death syndrome (SIDS), the customary diagnosis when an infant shows no outward signs of trauma. But after an autopsy, the coroner concluded that the cause of death was instead shaken baby syndrome (SBS). When a social worker informed Smith of that finding, Smith told her that Etzel had not responded to her touch while sleeping, so she had picked him up and given him “a little shake, a jostle” to wake him. Id., at 842. According to the social worker, Smith then said something to the effect of, “Oh, my God. Did I do it? Did I do it? Oh, my God.” Id., at 847 (internal quotation marks omitted). In an interview with the police a few days later, Smith said that she had shaken Etzel, but then she corrected herself and said that she had twisted him to try to elicit a reaction. Smith was arrested and charged with assault on a child resulting in death. See Cal. Penal Code Ann. § 273ab (West 2008) (“Any person who, having the care or custody of a child who is under eight years of age, assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, resulting in the child’s death, shall be punished by imprisonment. . . ”).
At trial, the jury heard seven days of expert medical testimony on the cause of Etzel’s death. The prosecution offered three experts, each of whom attested that Etzel’s death was the result of SBS — not SIDS, as the defense contended. The first expert, Dr. Eugene Carpenter, was the medical examiner for the Los Angeles County coroner who had supervised Etzel’s autopsy. Dr. Carpenter is board certified in forensic, anatomic, and clinical pathology. He testified that *4 Etzel’s autopsy revealed recent hemorrhages in the brain, and he opined that the bleeding and other features of Etzel’s pathology, including a bruise and abrasion on the lower back of the baby’s head, were consistent with violent shaking. Dr. Carpenter identified two means by which shaking can result in a baby’s death: The first is that the shaking causes blood vessels in the brain to tear, creating a pool of blood that pushes the brain downward into the spinal canal, resulting in death but little direct damage to the brain. The second is that the shaking itself is sufficiently severe that the brain directly tears in vital areas, causing death with very little bleeding. Dr. Carpenter testified that Etzel’s injuries were consistent with the latter pathology. He also explained that the injuries could not be attributed to either a fall from the sofa or the administration of cardiopulmonary resuscitation. Nor, according to Dr. Carpenter, was it possible that Etzel perished from SIDS, given the signs of internal trauma. Dr. Carpenter did testify, however, that while SBS victims often suffer retinal hemorrhaging, Etzel’s autopsy revealed no such injury.
The prosecution’s second expert, Dr. Stephanie Erlich, was the associate deputy medical examiner who actually performed Etzel’s autopsy. She is board certified in anatomic pathology and neuropathology. She corroborated Dr. Carpenter’s testimony about the autopsy findings, and added that a followup neuropathologieal examination of Etzel’s brain confirmed the existence of recent hemorrhaging. Noting only a minimal amount of new blood in Etzel’s brain, she testified that the cause of death was direct trauma to the brainstem. On cross-examination, she agreed with defense counsel that retinal hemorrhaging (absent in Etzel’s case) is present in 75 to 80 percent of SBS cases.
The third prosecution expert, Dr. David Chadwick, is board certified in pediatrics and the author of articles on childhood death by abusive trauma. He testified that Et- *5 zel’s injuries were consistent with SBS and that old trauma could not have been the cause of the child’s death.
The defense called two experts to dispute these conclusions. The first, pathologist Dr. Richard Siegler, testified that Etzel died from brain trauma, but that it was not the result of SBS, given the lack of retinal hemorrhaging. He admitted on cross-examination, however, that an absence of retinal hemorrhaging does not exclude a finding of SBS. He also acknowledged that he did not believe the cause of Etzel’s death was SIDS. According to Dr. Siegler, Etzel died from old trauma, an opinion he reached on the basis of studying photographs of the neuropathological examination.
The other defense expert, pediatric neurologist Dr. William Goldie, testified that Etzel’s death was due to SIDS. He noted that Etzel was born with jaundice, a heart murmur, and low birth weight — making him more susceptible to SIDS. Dr. Goldie testified that pathologists had not been able to determine the cause of Etzel’s death and that the bleeding could be attributed to the resuscitation efforts.
The jury found Smith guilty. Concluding that the jury “carefully weighed” the “tremendous amount of evidence” supporting the verdict, Tr. 1649, the trial judge denied Smith’s motion for a new trial and sentenced her to an indeterminate term of 15 years to life in prison.
On direct review, Smith contended that the evidence was not sufficient to establish that Etzel died from SBS. After thoroughly reviewing the competing medical testimony, the California Court of Appeal rejected this claim, concluding:
“The expert opinion evidence we have summarized was conflicting. It was for the jury to resolve the conflicts. The credited evidence was substantial and sufficient to support the jury’s conclusion that Etzel died from shaken baby syndrome. The conviction is supported by substantial evidence.” People v. Smith, No. B118869 (Feb. 10, 2000), App. K to Pet. for Cert. 86.
*6 The California Supreme Court denied review. App. J, id., at 74.
Smith then filed this petition for a writ of habeas corpus with the United States District Court for the Central District of California, renewing her claim that the evidence was insufficient to prove that Etzel died of SBS. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, that court had no power to afford relief unless Smith could show either that the California Court of Appeal’s decision affirming the conviction “was contrary to, or involved an unreasonable application of,” clearly established federal law as reflected in the holdings of this Court’s cases, 28 U. S. C. § 2264(d)(1), or that it “was based on an unreasonable determination of the facts” in light of the state court record, § 2254(d)(2). Harrington v. Richter, 562 U. S. 86, 100 (2011).
The Magistrate Judge to whom the case was assigned issued a report acknowledging that “[t]his is not the typical shaken baby case” and that the evidence against Smith “raises many questions.” App. I to Pet. for Cert. 65. But the Magistrate Judge nevertheless concluded that the evidence was “clearly sufficient to support a conviction.” Ibid. The District Court adopted the Magistrate Judge’s report and denied the petition. App. G, id., at 52.
On appeal, the Ninth Circuit reversed with instructions to grant the writ. Smith v. Mitchell, 437 F. 3d 884 (2006). Despite the plenitude of expert testimony in the trial record concluding that sudden shearing or tearing of the brainstem was the cause of Etzel’s death, the Ninth Circuit determined that there was “no evidence to permit an expert conclusion one way or the other” on that question because there was “no physical evidence of... tearing or shearing, and no other evidence supporting death by violent shaking.” Id., at 890. The court said that the State’s experts “reached [their] conclusion because there was no evidence in the brain itself of the cause of death.” Ibid, (emphasis in original). The *7 court concluded that because “[a]bsence of evidence cannot constitute proof beyond a reasonable doubt,” ibid., the California Court of Appeal had “unreasonably applied” this Court’s opinion in Jackson v. Virginia in upholding Smith’s conviction, 437 F. 3d, at 890.
That conclusion was plainly wrong. Jackson says that evidence is sufficient to support a conviction so long as “after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” 443 U. S., at 319. It also unambiguously instructs that a reviewing court “faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact, resolved any such conflicts in favor of the prosecution, and must defer to that resolution.” Id., at 326. When the deference to state court decisions required by § 2254(d) is applied to the state court’s already deferential review, see Renico, 559 U. S., at 778, there can be no doubt of the Ninth Circuit’s error below.
The jury was presented with competing views of how Etzel died. It was made aware of the various experts’ qualifications and their familiarity with both the subject of SBS and the physical condition of Etzel’s body. It observed the attorneys for each party cross-examine the experts and elicit concessions from them. The State’s experts, whom the jury was entitled to believe, opined that the physical evidence was consistent with, and best explained by, death from sudden tearing of the brainstem caused by shaking. The Ninth Circuit’s assertion that these experts “reached [their] conclusion because there was no evidence in the brain itself of the cause of death” is simply false. There was “evidence in the brain itself.” The autopsy revealed indications of recent trauma to Etzel’s brain, such as subdural and subarachnoid hemorrhaging, hemorrhaging around the optic nerves, and the presence of a blood clot between the brain’s hemispheres. *8 The autopsy also revealed a bruise and abrasion on the lower back of EtzeTs head. These affirmative indications of trauma formed the basis of the experts’ opinion that Etzel died from shaking so severe that his brainstem tore.
Defense counsel made certain that the jury understood that the prosecution’s experts were unable to identify the precise point of tearing itself. But as Judge Bea noted in his dissent from the Ninth Circuit’s denial of rehearing en banc, the experts explained why the location of the tear was undetectable: “Etzel’s death happened so quickly that the effects of the trauma did not have time to develop.” Smith v. Mitchell, 453 F. 3d 1203, 1207 (2006). According to the prosecutions’ experts, there was simply no opportunity for swelling to occur around the brainstem before Etzel died.
In light of the evidence presented at trial, the Ninth Circuit plainly erred in concluding that the jury’s verdict was irrational, let alone that it was unreasonable for the California Court of Appeal to think otherwise. See § 2254(d). Doubts about whether Smith is in fact guilty are understandable. But it is not the job of this Court, and was not that of the Ninth Circuit, to decide whether the State’s theory was correct. The jury decided that question, and its decision is supported by the record.*
It is said that Smith, who already has served years in prison, has been punished enough, and that she poses no danger to society. These or other considerations perhaps would be grounds to seek clemency, a prerogative granted to executive authorities to help ensure that justice is tempered by *9 mercy. It is not clear to the Court whether this process has been invoked, or, if so, what its course has been. It is not for the Judicial Branch to determine the standards for this discretion. If the clemency power is exercised in either too generous or too stingy a way, that calls for political correctives, not judicial intervention.
The decision below cannot be allowed to stand. This Court vacated and remanded this judgment twice before, calling the panel’s attention to this Court’s opinions highlighting the necessity of deference to state courts in § 2254(d) habeas cases. Each time the panel persisted in its course, reinstating its judgment without seriously confronting the significance of the cases called to its attention. See Patrick v. Smith, 550 U. S. 915 (vacating and remanding in light of Carey v. Musladin, 549 U. S. 70 (2006)), reinstated on remand, 508 F. 3d 1256 (2007) (per curiam); 558 U. S. 1143 (2010) (vacating and remanding in light of McDaniel v. Brown, 558 U. S. 120 (2010) (per curiam)), reinstated on remand sub nom. Smith v. Mitchell, 624 F. 3d 1235 (2010) (per curiam). Its refusal to do so necessitates this Court’s action today.
The petition for a writ of certiorari and respondent’s motion to proceed in forma pauperis are granted. The judgment of the Court of Appeals for the Ninth Circuit is reversed, and the ease is remanded for further proceedings consistent with this opinion.

It is so ordered.

The dissent’s review of the evidence presented to the jury over seven days is precisely the sort of reweighing of facts that is precluded by Jackson v. Virginia, 443 U. S. 307, 324 (1979), and precisely the sort of second-guessing of a state court decision applying Jackson that is precluded by AEDPA, 28 U. S. C. § 2254(d). The dissent’s views on how “adamantly” experts would testify today as opposed to at the time of trial, post, at 14 (opinion of Ginsburg, J.), are of course pure speculation, as would be any views on how a jury would react to less adamant testimony.