# SUPREME COURT OF THE UNITED STATES

### BRENDA CASH, ACTING WARDEN *v.* BOBBY JOE MAXWELL

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–1548.   Decided January 9, 2012

JUSTICE SCALIA, with whom JUSTICE ALITO joins, dissenting from denial of certiorari.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) put an end to federal-district-court readjudication of issues already decided, with full due process of law, in state criminal cases. It provides that a writ of habeas corpus challenging a state criminal conviction shall not be granted with respect to any claim "adjudicated on the merits in State court proceedings," unless that state adjudication

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U. S. C. §2254(d).

We have called this a "difficult to meet . . . and highly deferential standard" which "demands that state-court decisions be given the benefit of the doubt," *Cullen* v. *Pinholster*, 563 U. S. ___, ___ (2011) (slip op., at 9) (internal quotation marks omitted). It forbids federal courts "to second-guess the reasonable decisions of state courts," *Renico* v. *Lett*, 559 U. S. ___, ___ (2010) (slip op., at 12).

I believe that in this case the United States Court of Appeals for the Ninth Circuit unquestionably ignored

these commands—thereby invalidating two 26-year-old murder convictions which the intervening loss of witnesses and evidence will likely make it impossible to retry. I dissent from the Court's decision not to grant certiorari and summarily reverse the Ninth Circuit's judgment.

I

In the late 1970's, 10 homeless men were murdered in downtown Los Angeles—a series of murders that came to be known as the "Skid Row Stabber" killings. Respondent Bobby Joe Maxwell was charged with all 10 murders, and in 1984 a California jury convicted him of two counts of first-degree murder and one related count of robbery. Maxwell was sentenced to life imprisonment without the possibility of parole, and his convictions were affirmed on direct appeal.

In 1995, Maxwell filed a habeas corpus petition in the California Supreme Court, alleging that a prosecution witness, Sydney Storch, had given false testimony at trial. Storch, a former cellmate of Maxwell's, had testified that, after reading the newspaper account of a palm print's being found at the scene of one of the murders, Maxwell stated he was not prone to that type of mistake because he "wore gloves with the fingers cut off so as to keep his hands warm and leave his fingers free." 3 Record 537. The California Supreme Court issued an order to show cause whether Maxwell was entitled to relief based on his allegation of false testimony, returnable to the Superior Court. After conducting an evidentiary hearing that extended over the course of two years and included the testimony of more than 30 witnesses and the introduction of over 50 exhibits, the Superior Court issued a 34-page opinion concluding that Storch had not lied and denying the habeas petition. App. to Pet. for Cert. 137. In 2001, Maxwell again filed a habeas petition in the California Supreme Court, alleging, *inter alia*, that the State had

violated his right to due process by failing to disclose certain evidence relating to Storch. See *Brady* v. *Maryland*, 373 U. S. 83, 87 (1963). The court summarily denied the petition. App. to Pet. for Cert. 105.

Maxwell then filed a petition for writ of habeas corpus under §2254 in the United States District Court for the Central District of California, renewing his claims that his conviction violated his right to due process because (1) it was based on the false testimony of Storch; and (2) the State failed to disclose favorable and material evidence regarding Storch. The District Court dismissed the petition, *id.*, at 47, but the Ninth Circuit reversed. *Maxwell* v. *Roe*, 628 F. 3d 486 (2010).

## II
### A

First, the Ninth Circuit set aside the state habeas court's determination that Storch had not fabricated his testimony. It based that action on nothing more than circumstantial evidence indicating that Storch was generally an untruthful person. For example, the court pointed to various mistruths Storch purportedly told at trial (regarding, for example, his criminal history and his motivation for coming forward). But as the Ninth Circuit itself recognized, those lies "d[o] not alone establish that Storch lied about the confession." *Id.*, at 501. The Ninth Circuit also concluded that Storch "misrepresented his sophistication and experience as a jailhouse informant." *Ibid.* This finds no support in the record. App. to Pet. for Cert. 119–120. Storch's only testimony as to his informant history was that he had never before testified for the district attorney, 3 Record 551; no evidence in the habeas record contradicts that. The Ninth Circuit went on to conclude that Storch had a history of falsely implicating individuals. But any evidence of this, as the state court noted, was highly speculative, see, *e.g.*, App. to Pet. for Cert. 136—

and two officers testified at the state evidentiary hearing that in various cases Storch had provided them with accurate and reliable information. *Id.*, at 125–126. Finally, the Ninth Circuit accorded significance to trials subsequent to Maxwell's in which Storch allegedly testified falsely. The state court had concluded that these post-trial events did not establish the falsity of Storch's testimony, *id.*, at 136–137, and the Ninth Circuit apparently agreed, see 628 F. 3d, at 503 ("The evidence of Storch's later lies under oath does not establish the nature of his testimony at Maxwell's trial").*

In sum, the evidence relied on by the Ninth Circuit might permit, but by no means compels, the conclusion that Storch fabricated Maxwell's admission. And that leaves out of account (just as the Ninth Circuit inexplicably did) the other evidence suggesting that Storch was not lying—including testimony that Maxwell confessed the crime, indeed confessed the crime much more explicitly, to two cellmates other than Storch. The statement of JUSTICE SOTOMAYOR makes its task far too easy by setting out to show the unreasonableness of the California court's statement that there was "no credible or persuasive evidence Sidney Storch lied," *ante*, at 1 (internal quotation marks omitted). It is not the court's statements that are at issue here. To establish even a wild exaggeration is not to establish what §2254(d)(2) requires: that the state court's "*decision . . .* was based on an unreasonable *deter-*

———————

*The evidence identified by JUSTICE SOTOMAYOR is similarly inconclusive, and the state habeas court reasonably discounted it. For instance, the so-called "manual," *ante*, at 2, is all but illegible, 2 Record 461; as the state court recognized, the portions that can be read do not reveal whether Storch was instructing another inmate to "provid[e] substance or style." App. to Pet. for Cert. 133. And the opinion of the prosecutor who declined to use Storch in a trial that postdated Maxwell's by nearly three years, *ante*, at 2, was deemed "unconvincing" by the state court, since it was based on jail records of questionable accuracy. App. to Pet. for Cert. 134.

*mination* of the facts." The only factual determination necessary to support the California court's decision was that Maxwell *had not established* that Storch lied. And it is of course *that* point to which the California court directed its attention. ("[Certain evidence] does little to establish whether [Storch] lied about [Maxwell's] admissions in 1984." App. to Pet. for Cert. 136.) What JUSTICE SOTOMAYOR calls "the overwhelming evidence supporting the conclusion that Storch falsely testified at Maxwell's trial," *ante*, at 3, consists of nothing more than evidence which establishes, at most, that Storch was an habitual liar. That may well provide reason to suspect that Storch testified falsely at Maxwell's trial; or even to think it likely that Storch testified falsely; but it does not remotely support the conclusion that it was *unreasonable* to determine that Maxwell *had not established* that Storch testified falsely. In finding the state court's determination not merely wrong but unreasonable, the Ninth Circuit plainly did what we have said §2254(d) forbids: It "use[d] a set of debatable inferences to set aside the conclusion reached by the state court." *Rice* v. *Collins*, 546 U. S. 333, 342 (2006).

To make matters worse, having stretched the facts, the Ninth Circuit also stretched the Constitution, holding that the use of Storch's false testimony violated the Fourteenth Amendment's Due Process Clause, whether or not the prosecution knew of its falsity. See 628 F. 3d, at 506–507. We have never held that, and are unlikely ever to do so. All we have held is that "a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment." *Napue* v. *Illinois*, 360 U. S. 264, 269 (1959) (emphasis added). This extension of due process by the Ninth Circuit should not be left standing.

## B

The Ninth Circuit also concluded that the California

Supreme Court unreasonably applied *Brady.* In its view, the prosecution committed a *Brady* violation by failing to disclose two pieces of impeachment evidence: (1) the difference between Storch's original plea deal and the plea deal Storch negotiated independently from his public defender after he offered to testify; and (2) Storch's cooperation with law enforcement officials in the years preceding Maxwell's trial. The Ninth Circuit said that this evidence was material to Maxwell's guilt, (which is what a violation of *Brady* requires, see *Strickler* v. *Greene*, 527 U. S. 263, 280 (1999)), because "Storch's testimony was crucial to the prosecution's case" and the evidence "could have been used to undermine" Storch's credibility. 628 F. 3d, at 512.

Neither of these contentions is remotely true. As for the "crucial" nature of Storch's testimony: Storch was just one of four cellmates who recounted Maxwell's incriminating statements, and there was ample other evidence of Maxwell's guilt, including an eyewitness identification and evidence of Maxwell's palm print near one of the murder scenes. And as for the potential utility of the undisclosed evidence in *refuting* Storch's less-than-crucial testimony: According to the Ninth Circuit, evidence that Storch originally had a plea deal of 36 months, which improved to 16 months after he offered to testify, would have "provided Maxwell with impeaching evidence relevant to Storch's motivation for testifying." *Id.*, at 510. But the jury already *knew* that Storch would not have testified without a deal. Storch said on the stand that he faced the possibility of six years' imprisonment on pending charges and received a 16-month deal in exchange for his testimony; and responded in the negative when asked whether he "would be willing to bring forth this story and tell the D. A. to forget the kindness that he is showing towards" him. 3 Record 562–563. The additional knowledge that he secured a deal that improved his sentence from 36 months

to 16 months (rather than from six years to 16 months) would have done nothing to reduce the jurors' belief in his testimony.

The Ninth Circuit also erred in concluding that evidence of Storch's prior activity *as a police informant* would have helped to contradict his testimony that he had never before *testified for the district attorney*. See 628 F. 3d, at 511. The recitation of this non sequitur is its own refutation.

Finally, the Ninth Circuit's conclusion that both pieces of evidence could have been used to establish Storch's sophistication as an informant does not hold water. To begin with, the court erred in its belief that Storch "independently negotiated" the new deal, *id.*, at 498. While it was true enough that Storch "worked a deal . . . without his public defender," *id.*, at 510, that does not establish that he negotiated a deal *on his own*. As Maxwell acknowledges, Storch "obtained a private lawyer to work out" the deal. Brief in Opposition 14. Moreover, the jury was aware of this fact because Storch himself testified to it. 3 Record 596. And it is incomprehensible how the substitution of a 16-month-instead-of-36-month deal for a previous 16-month-instead-of-6-year deal demonstrates Storch's sophistication. Of similarly questionable value is evidence of Storch's prior activity as a police informant. Contrary to the Ninth Circuit's intimations, this would not have portrayed Storch as a wheeler-dealer who trumped up stories to receive decreased sentences. Indeed, there was no evidence that Storch received anything in exchange from the police, App. to Pet. for Cert. 125–126, and as I have described, *supra*, at 3–4, two officers testified at the evidentiary hearing that information he provided them was reliable.

In view of the evidence, it is not possible to say that the California Supreme Court's denial of the claim "was so lacking in justification that there was an error well under-

stood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington* v. *Richter*, 562 U. S. ___, ___ (2011) (slip op., at 13). In fact, it seems clear that Maxwell was not entitled to relief.

\*　　\*　　\*

It is a regrettable reality that some federal judges *like* to second-guess state courts. The only way this Court can ensure observance of Congress's abridgement of their habeas power is to perform the unaccustomed task of reviewing utterly fact-bound decisions that present no disputed issues of law. We have often not shrunk from that task, which we have found particularly needful with regard to decisions of the Ninth Circuit. See, *e.g.*, *Cavazos* v. *Smith*, 565 U. S. 1 (2011) *(per curiam)* (reinstating California conviction for assault on a child resulting in death); *Felkner* v. *Jackson*, 562 U. S. ___ (2011) *(per curiam)* (reinstating California conviction for sexual attack on a 72-year-old woman); *Premo* v. *Moore*, 562 U. S. ___ (2011) (reinstating Oregon conviction for murder of a kidnaped victim); *Knowles* v. *Mirzayance*, 556 U. S. 111 (2009) (reinstating California first-degree murder conviction); *Rice* v. *Collins*, 546 U. S. 333 (2006) (reinstating California conviction for cocaine possession); *Kane* v. *Garcia Espitia*, 546 U. S. 9 (2005) *(per curiam)* (reinstating California conviction for carjacking and other offenses); *Yarborough* v. *Gentry*, 540 U. S. 1 (2003) *(per curiam)* (reinstating California conviction for assault with a deadly weapon); *Woodford* v. *Visciotti*, 537 U. S. 19 (2002) *(per curiam)* (reinstating capital sentence for California prisoner convicted of first-degree murder, attempted murder, and armed robbery). Today we have shrunk, letting stand a judgment that once again deprives California courts of that control over the State's administration of criminal justice which federal law assures. We should grant the petition for certiorari and summarily reverse the Ninth Circuit's latest unsupportable §2254 judgment.