DRONEY, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s reversal of Clark’s conviction for possession of cocaine. I believe that count of *814 conviction was supported by sufficient evidence for the jury to conclude that Clark was guilty beyond a reasonable doubt.
I. Factual Background
The events leading up to Clark’s arrest provide important context for Clark’s sufficiency of evidence challenge. Shortly before 2:00 a.m. on November 16, 2002, a 911 operator in the Niagara County Sheriffs Department informed police officers that she had just received a call from a woman in a local bar, and that the caller “said that Chris and Jason ... Richardson ... [a]re out front in an older white Jeep Cherokee with guns. And they might not be there now but they have been circling the block because they are apparently going to attack somebody when they come out.” Officer Scott Snaith of the City of Lockport Police Department took the call from the 911 operator, and knew that the Richard-sons had been involved in previous violent crimes. Officer Snaith relayed the information to fellow officers Steven Abbott and Todd Chenez, who then responded to the call.
After conferring briefly, Officers Abbott and Chenez saw the Jeep in a parking lot across from the bar, blocked the Jeep with their two patrol cars and exited their vehicles. With guns drawn, each officer walked along a side of the Jeep. Officer Abbott saw Raymond Flores and Jason Richardson in the back seat of the car, and Christopher Richardson in the front passenger seat. Clark was in the driver’s seat. Officer Abbott recognized Flores and the Richardsons from previous incidents. After observing some “nervous” movement from Clark, Abbott ordered the occupants of the car to “place their hands forward.” Officer Abbott then began to question Clark through the open driver’s window. Officer Abbott told Clark that the officers were responding to a report of possible firearms, and asked whether there were any handguns in the car. Clark denied that there were any weapons. Officer Abbott then asked Clark to consent to a search, which Clark declined. Other officers began to arrive, and Officer Abbott asked Clark to step out of the car. Officer Abbott saw the butt of a handgun underneath the front of the driver’s seat as Clark was getting out of the car.
Officer Abbott did a pat-down of Clark for other weapons and Clark was then handcuffed and placed in the back seat of Sheriffs Deputy Anthony Giamberdino’s patrol car. Clark was left alone in the patrol car while Abbott and the other officers seized the handgun and dealt with the passengers in the Jeep. Clark was then transported to police headquarters in Gi-amberdino’s patrol car. Just as Clark was removed from the patrol car, a lighter was found on the back seat. Giamberdino removed it and then pulled up the back seat and discovered loose cocaine underneath the area where Clark had been sitting. Clark was charged with being a felon in possession of the handgun and ammunition, and unlawful possession of the cocaine, and the jury found him guilty of both offenses.
II. Discussion
The majority concludes that there was insufficient evidence to affirm the jury’s verdict on the drug count. It takes the position that any reasonable jury would inevitably be left with a reasonable doubt as to whether the cocaine found underneath the seat of the patrol car was Clark’s. I disagree. A rational jury could have concluded beyond a reasonable doubt that Clark deposited the cocaine underneath the seat of the patrol car. The evidence offered at trial would have permitted the jury to conclude, for example, that Officer Abbott missed the cocaine in *815 his initial weapons pat-down of Clark, and that Clark used his substantial time alone in the patrol car to place the cocaine underneath the back seat. As emphasized in the majority opinion, Officer Abbott patted down Clark for weapons before he was placed in the back seat of the patrol car. The fact that Officer Abbott did not find drugs in this search is significant, but it cannot bear the weight given it by the majority. Officer Abbott conducted the pat-down in a dangerous situation involving at least one weapon. Indeed, Officer Abbott himself had already seen a handgun underneath Clark’s seat in the Jeep, and there were still three suspects in the car when Abbott did the pat-down of Clark. Moreover, the officers were on the scene because of a report that an attack involving weapons was imminent. No mention of drugs or a drug transaction was made in the 911 call. Given these facts, it would be entirely reasonable for a jury to credit Officer Abbott’s trial testimony that he was only looking for weapons during Clark’s pat-down, not drugs. As Officer Abbott testified: “Q. You pat him down for purposes of looking for weapons? A. Correct. Q. Or any contraband? A. Just weapons.” Tr. 152. Given the nature of the pat-down and the circumstances surrounding it, it would be quite reasonable to conclude that the cocaine was missed.[1]
Clark was placed in the back seat of Deputy Giamberdino’s patrol car and he remained there alone for five to ten minutes while the police were still dealing with the three passengers in Clark’s Jeep. Although Deputy Giamberdino testified that he was keeping an eye on his patrol car during that time, his testimony indicates that he was only focused on ensuring that Clark remained in the car, and that no one attempted to release him from the car. Tr. 463 (“Q. At any time that you observed the vehicle, did you see Mr. Clark make any type of motions in the rear of your vehicle? ... A. I can’t really say because of it being dark out and the window — I was just making sure nobody was going by the vehicle ... he didn’t kick anything out like the window or anything, that’s all.”); Tr. 473 (“Q____Were you constantly looking at that vehicle, at Mr. Clark in that vehicle during the time he was there and you were at the scene? A. No. I was just mainly watching the vehicle so nobody approached it to let him out. It’s happened in the past.”). Deputy Giamberdino did not testify that he was looking to see, for example, whether Clark was trying to hide anything in the patrol car during that time. As a result, Clark’s opportunity to hide the cocaine beneath the seat was not limited to the period when the officers were in the police car with Clark or transporting him, as the majority suggests. The jury could well have concluded that Clark used his substantial time alone to remove a baggy from his back pocket and empty its contents underneath the seat.
While this may have been difficult because Clark was handcuffed, it was not impossible, and the stakes for Clark were high. Clark would also have been aided by the design of the seat. As explained in testimony at trial, the horizontal part of the seat was designed to open upward from the back (away from the vertical part that forms the back of the seat). Although Clark’s hands were cuffed behind his back, he still could have retrieved the cocaine from a back pocket of his pants and emp *816 tied the cocaine into the gap between the horizontal and vertical parts of the seat.
The fact that no baggy was found with the cocaine is also understandable. The jury may have reasonably determined that Clark retained the baggy and kept it hidden in his hands or clothes until he was out of the car and could discard it, perhaps out of a concern that the baggy had his fingerprints or other identifying information.
Admittedly, there is no testimony indicating that the officers saw cocaine on Clark’s person after removing Clark from the car. However, Giamberdino and another Deputy Sheriff who helped Clark out of the car at the police station — Deputy May — testified that they simply did not check for such traces. Tr. 399 (May did not search Clark’s pockets or clothing); Tr. 465-67 (Giamberdino did not look at Clark’s clothing or hands as he was being led away from the car). The officers also did not look for a baggy. Tr. 399 (May did not search the patrol car for a baggy); Tr. 469 (Giamberdino did not search the patrol car for a baggy). A reasonable jury could have determined that Clark managed to hide and dispose of an empty baggy without the deputies’ knowledge after he was removed from the police car, as he was walked into and through the police station.
In rejecting this series of events, the majority also necessarily rejects the trial testimony of Deputy Giamberdino. Giam-berdino specifically testified that he thoroughly checked behind and underneath the back seat of his patrol car for contraband, as he always did before starting a shift. Giamberdino further testified that no one other than Clark had access to that area of the patrol car that evening. It was certainly reasonable for the jury to conclude from this testimony that Clark was the only possible source of the cocaine.
Indeed, it is essentially impossible to square Deputy Giamberdino’s testimony with the majority’s position that there was insufficient evidence to convict Clark on the drug count of the indictment. Either the majority suspects that police officers planted the drugs in order to implicate Clark, or that Deputy Giamberdino was somehow mistaken in his sworn testimony that he inspected underneath the seat before Clark was placed in the car, as was his usual practice, including pulling the back seat forward and checking under it. It would also seem odd that, if police officers intended to “plant” drugs on Clark they would have done it in this way. Why would officers place the drugs there and in that way, instead of simply leaving a baggy with cocaine in it on top of the seat? And why would officers go to that trouble, given that they already had a very strong case against Clark on the more serious offense of possessing a firearm? The idea that Deputy Giamberdino was mistaken about having inspected underneath the seat before Clark entered raises further concerns. Giamberdino testified very specifically and repeatedly that he had checked beneath the rear seat at the beginning of every shift, as well as that night. Tr. 439-43. And if the drugs were in the car before Clark got in, where would they have come from? Were they placed there by some prior prisoner?[2] Was it possible that a previous prisoner — a prisoner who was undoubtedly patted down like Clark, handcuffed like Clark, and supervised like Clark emptied the cocaine underneath the seat? If so, why is it so unlikely that Clark did it? Given the absence of a more plausible innocent expla *817 nation, it was not unreasonable for the jury to find as it did.
There is also Clark’s spontaneous statement, “I’ll confess to everything if you let my cousins go.” Tr. 487. If Clark made this statement after being confronted with the cocaine in the back seat of the patrol car, the jury may well have concluded that Clark was offering to confess to possession of the cocaine, as well as the weapons offense. Contrary to the majority’s assertion, there was a basis for the jury’s conclusion that Clark knew that the cocaine had been discovered at the time he volunteered to confess. Deputy Giamberdino specifically testified that Clark was present when he discovered the cocaine, and that Clark was present when Giamberdino called out, “I got powder back here.” Tr. 466-67. As a result, the jury could easily have concluded that Clark was aware that he would also be charged with cocaine possession at the time that he offered to “confess to everything.”
Appellate courts must not abdicate their role in ensuring that convictions are supported by adequate evidence. Here, however, the evidence was sufficient to permit a reasonable jury to find Clark guilty beyond a reasonable doubt of possession of cocaine. “[I]t is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury’s verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.” Cavazos v. Smith,—U.S.-, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam).

. The record does not appear to indicate how much cocaine was ultimately discovered. However, the government charged Clark only with simple possession of the cocaine under 21 U.S.C. § 844(a), as opposed to the offenses that apply to possession with intent to distribute. See, e.g., 21 U.S.C. § 841(b)(l)(A)-(B).

. Deputy May, who was assigned to that patrol car with Giamberdino, also testified that no one other than Clark had been in the back seat of the patrol car that evening and that the drugs were not underneath the back seat before Clark was placed there.