NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2872
_____

A.P.; V.P.,

Appellants

v.

GLADIBEL MEDINA, Medical Doctor
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-17-cv-13794)
District Judge: Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 13, 2019
Before: HARDIMAN, KRAUSE, and PORTER, *Circuit Judges*.

(Filed: June 18, 2019)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

A.P. and V.P. appeal the District Court's order dismissing their complaint for failing to state a claim against Gladibel Medina, M.D. The crux of their complaint is that Dr. Medina, acting on behalf of the Hudson County Division of Child Protection and Permanency (DCPP), deprived them of their right to substantive due process. The parents claim Dr. Medina caused them to lose custody of their two-month-old son because of her improper investigation and report of the child's injuries. Because we agree with the District Court that the complaint failed to meet the high standard to plead a constitutional tort, we will affirm.

I[1]

According to the complaint, A.V.P. fell and hit his head on a television stand on December 23, 2015 and was taken to Christ Hospital. After A.V.P. was transferred to St. Peter's Hospital, on December 25, 2015, police officers from the Hudson County Special Victims Unit interviewed A.P. and V.P. Five days later, DCPP took custody of A.V.P. without a court order based on the concern that the infant's injuries had been inflicted. That custody arrangement was continued by order of the Superior Court of Hudson

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291. We review a District Court's order granting a motion to dismiss for failure to state a claim de novo. *E.g.*, *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

County, New Jersey on January 4, 2016, pending a hearing on the petition for custody filed by DCPP.

Dr. Medina's involvement in the matter began on January 6, 2016, when she examined A.V.P. at the Dorothy B. Hersch Regional Child Protection Center following a referral by DCPP. She completed Child Protection Center reports dated January 20, March 21, April 19, and August 1, 2016.

A.V.P.'s parents alleged that Medina violated their right to substantive due process by relying on "junk science," by omitting from her reports a test result that supported a non-abusive explanation for A.V.P.'s injuries, and by misrepresenting his injuries in her reports. App. 30, ¶¶ 88–90. These circumstances, they argue, supported a reasonable inference that Medina was deliberately indifferent to their parental rights and to well-established medicine and science. We agree with the District Court that the complaint contained insufficient facts to find that Medina's conduct "shocks the conscience." *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (en banc) (quoting *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999)); *see Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016). After DCPP and the Superior Court decided to separate A.V.P. from his parents pending medical investigation, Medina had a reasonable basis to continue her investigation until genetic testing revealed another (extremely rare) explanation for A.V.P.'s injuries. And when Medina stated those results in her final report, DCPP immediately sought dismissal of its custody petition.

Integral to the parents' complaint, and quoted throughout it, are Medina's detailed reports and updates about her investigation. As such, the District Court could consider the reports in their entirety—without converting the motion to dismiss into one for summary judgment or necessarily accepting the complaint's characterizations of their contents. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Those reports show that Medina recognized from the outset that A.V.P.'s injuries might not have resulted from abuse and that further investigation was needed, because abusive head trauma had not been ruled out. *See* App. 47 ("[M]edical work-up is not complete and metabolic testing through genetics is still pending to rule out an organic disorder potentially associated with the injuries found on this infant. Abusive Head Trauma must be considered as this investigation continues and should be explored with all of [A.V.P.'s] caregivers given the safety risks involved."). The parents respond that the reports' discussion of the evidence about A.V.P.'s bilateral multilayered retinal hemorrhages and chronic subdural hemorrhages shows that Medina's ongoing medical investigation was a "cover up" and "stall tactic." Appellants' Br. 11.

Regarding both types of hemorrhages, A.V.P.'s parents argue that Medina's references to "rapid" or "repetitive acceleration/deceleration incidents" reveal that she based her decisions to continue the investigation on shaken baby syndrome—a discredited basis, they allege, for explaining his hemorrhages. App. 47, 50; *see also Cavazos v. Smith*, 565 U.S. 1, 13–14 (2011) (Ginsburg, J., dissenting) (collecting

4

research). This forms the crux of their "junk science" argument, but it ignores two key qualifications in Medina's reports. First, Medina did not diagnose "inflicted" or "Abusive Head Trauma" based on "repetitive acceleration/deceleration incidents" alone. App. 47, 50. She merely noted that injuries like A.V.P.'s can result from such incidents. In addition, she cited "acceleration/deceleration incidents *with or without* impact." App. 47 (emphasis added). Incidents *with* impact—as could result from inflicted abuse without shaking—could have caused the hemorrhages Medina observed. So the parents claim only half of one example was in error. Even assuming it was, Medina's mention of acceleration/deceleration incidents without impact as a potential cause, when read in context, does not plausibly demonstrate deliberate indifference or shock the conscience. *See Miller*, 174 F.3d at 375–76 (explaining that the degree of wrongfulness depends on the circumstances, but allegations of negligence or simple error do not state a valid substantive due process claim). What's more, she had another reasonable basis to continue investigating, which she made clear in the same sentence: incidents *with* impact. At the same time, she did not rule out "an organic disorder potentially associated with the injuries." App. 47.

Regarding the chronic subdural hemorrhages, A.V.P.'s parents argue that Medina's omission of an MRI scan showing extra-axial cerebral spinal fluid collection (not just blood) and her misrepresentation of that fluid collection as only a chronic subdural hemorrhage (just blood) reveal her deliberate indifference. But Medina's first

report does mention the MRI scan. App. 46–47. And that mention, albeit brief, does not rule out the presence of spinal fluid; instead, it accurately states that blood was present: "defined by CT and MRI head studies as demonstrating acute, subacute and chronic subdural intracranial bleeding components (old and new blood)." *Id.* Thus, reading the reports in full, Medina did not omit or misrepresent the MRI findings, let alone do so in a way that could support a claim of deliberate indifference or conscience-shocking behavior.[2]

\* \* \*

For the reasons stated, we will affirm the District Court's order.

---

[2] For the same reasons, the complaint proves insufficient under the professional judgment standard we have noted could apply to professionals in the child custody context. *Nicini*, 212 F.3d at 811 n.9 (requiring "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment" (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)).

6