**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 8, 2020
Decided July 20, 2020

*Before*

DIANE P. WOOD, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-3371

| | |
|---|---|
| YSOLE KROL, | Appeal from the United States District Court |
| *Petitioner-Appellant,* | for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 16 CV 11595 |
| TERI KENNEDY, | Manish S. Shah, |
| *Respondent-Appellee.* | *Judge.* |

**O R D E R**

Ysole Krol was convicted in Illinois of first-degree murder under an accountability theory; she was sentenced to 35 years' imprisonment. After unsuccessfully appealing her conviction and sentence, and after exhausting her state postconviction remedies, she filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied her petition but issued a certificate of appealability on one issue: whether there was sufficient evidence of her intent to aid and abet the murder. Because the Illinois Appellate Court's conclusion that Krol had the requisite intent was not objectively unreasonable, we affirm the district court's denial of Krol's habeas corpus petition.

# I

Krol's boyfriend, Sergio Martinez, shot and killed Christopher Rivera. For her role in the offense, Krol (along with Martinez) was charged with first-degree murder. See 720 ILCS 5/9-1(a). The two were tried simultaneously, but Martinez opted for a trial by jury, while Krol chose a bench trial. Our account of the facts comes from the evidence introduced at trial.

Krol and Martinez were once friends with Rivera and all three lived in the same neighborhood. But after Martinez had a fight with Rivera, the friendship ended. In the aftermath, Krol and Martinez moved out of the neighborhood but continued to receive harassing text messages from Rivera at all hours of the day.

On December 18, 2009, Krol, along with Martinez, his brother (Jose Martinez), and a friend (Joshua Bzdusek), used Krol's mother's car to go shopping. Martinez drove, Krol sat in the passenger seat, and the two others were in the back seat. Bzdusek testified that during the ride, he spotted Rivera's two brothers. A short time later, Bzdusek continued, Martinez pulled into a gas station to put air in the tires, and they saw Rivera walk out of the gas station. He heard Martinez point out Rivera to Krol and say, "That's the mother fucker. That's Chris." Martinez called Rivera and said that he was coming to get money that Rivera owed him. The group then drove to Rivera's home.

When Martinez and the others arrived at Rivera's home, Rivera and his two brothers came outside and ran towards the car. Rivera or one of his brothers threw something that struck the car. Jose saw Rivera holding something that appeared to be a gun and then heard repeated "popping" noises. Krol screamed to Martinez to drive away, but he could not because another car had blocked their path.

The witnesses gave differing testimony about what happened next. Krol testified that Martinez said he was going to scare Rivera and asked her to take a gun out of the glove compartment. She stated that she did not know if the gun was loaded. Jose testified that Martinez told Krol to give him a gun, and a few seconds later he heard Martinez fire through the open window. Bzdusek said he heard Martinez tell Krol to "pass [him] the gun" and heard a shot. Neither Bzdusek nor Jose saw Krol pass a gun to Martinez.

What was beyond dispute was that Martinez had shot Rivera in the head, killing him. The group drove away, with Krol at the wheel. She drove to her home and parked

in the garage. Martinez left with the gun, while Krol, Jose, and Bzdusek cleaned the outside of the car so that it would appear to have been in her garage all along.

Back at the scene of the shooting, investigating officers recovered a wrench, a BB gun, and a spent shell casing. An officer responsible for locating the car, which witnesses had described, went to Krol's home and saw the suspect car parked in the open garage. He received consent from the homeowner—Krol's mother—to search the car, which was then impounded.

Based on this evidence, the trial court found Krol guilty under an accountability theory of first-degree murder. See 720 ILCS 5/9-1(a)(1) and (2) (murder); 720 ILCS 5/5-2(c) (legal accountability). The court found that Krol took the gun from the glove compartment to give to Martinez, put the gun back in the compartment after Martinez fired the shot, drove home, cleaned off the car, and did not call the police, both facilitating the shooting and aiding Martinez's escape. As to intent, the court concluded that "[w]hile there is no evidence of any participation in the discussion of a plan to shoot and kill the victim, when defendant handed the gun to the codefendant, defendant knew or should have known that her codefendant intended to shoot at the victim and that such conduct created a strong possibility of death or great bodily harm."

Krol appealed. She argued in part that there was insufficient evidence to sustain her conviction. But the state appellate court rejected this argument. It explained that because Krol handed Martinez the gun, she was a participant in the shooting as opposed to being merely present. As for Krol's intent, the court continued, there was evidence that Krol and Martinez felt a general animosity towards Rivera after their falling out, and it was reasonable to infer that Krol and Martinez became angrier with Rivera once he began to attack and damage Krol's car. The court also highlighted that after the shooting, Krol drove home, parked the car in the garage, and cleaned it, thus facilitating their attempted escape and demonstrating her consciousness of guilt. Therefore, it concluded, a reasonable trier of fact could conclude that Krol handed the gun to Martinez knowing that doing so would cause Rivera's death, and that she knew that her actions when handing Martinez the gun were creating a strong probability of death or great bodily harm to Rivera. The Illinois Supreme Court denied Krol's petition for leave to appeal. After that, Krol twice moved unsuccessfully for state postconviction review.

Krol then filed a petition for a writ for habeas corpus in federal district court. See 28 U.S.C. § 2254. As relevant here, she maintained that there was insufficient

evidence to prove that she intended to cause death or significant bodily harm to Rivera when she handed the gun to Martinez, and that instead, the evidence unequivocally showed that she had acted in a panicked state with no intent to cause harm. The district court acknowledged that the evidence both supported and undermined the State's assertion that Krol intended for Martinez to harm Rivera when she handed him the gun. But, it concluded, it was not objectively unreasonable for the state court to conclude that the evidence was sufficient to support a finding that Krol knew that handing Martinez the gun created a strong probability of death or great bodily harm. It thus rejected her petition, but it issued a certificate of appealability for the intent issue.

**II**

When a federal habeas corpus petitioner argues that there was insufficient evidence of guilt, a federal court may grant relief only if the adjudication of the claim by a state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Saxon v. Lashbrook*, 873 F.3d 982, 987 (7th Cir. 2017) ("Generally, we review habeas challenges to the sufficiency of the evidence only under § 2254(d)(1)."). The Supreme Court has established the governing standard for such challenges: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). It is the factfinder's duty "to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). On direct appeal, the state appellate court determines whether any rational trier of fact could have found the evidence sufficient. See *Saxon*, 873 F.3d at 987. The habeas corpus statute adds another layer of deference: A federal court may overturn the state appellate court's conclusion that sufficient evidence supported the conviction only if that determination was objectively unreasonable. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012); *Saxon*, 873 F.3d at 987.

In Illinois, a person commits first-degree murder if, in performing acts that cause a death, she "intends to kill or do great bodily harm to that individual," 720 ILCS 5/9-1(a)(1), or "he or she knows that such acts create a strong probability of death or great bodily harm to that individual or another," *id.* 5/9-1(a)(2). A person is accountable for the conduct of another when she intends to facilitate the commission of an offense and aid the other in the commission of that offense. 720 ILCS 5/5-2(c). Intent "may be inferred from the character of defendant's acts as well as the circumstances surrounding the commission of the offense." *People v. Perez*, 725 N.E.2d 1258, 1265 (Ill. 2000). "Proof

that defendant was present during the perpetration of the offense, that he maintained a close affiliation with his companions after the commission of the crime, and that he failed to report the crime are all factors that the trier of fact may consider" in finding legal accountability. *People v. Taylor*, 646 N.E.2d 567, 571 (Ill. App. Ct. 1995).

Krol does not contend that there was insufficient evidence to find Martinez guilty of first-degree murder. She instead argues that the state failed to prove her accountability for that crime and that it was objectively unreasonable for the appellate court to conclude otherwise. The court's decision, she asserts, was based on speculation and a weak chain of inferences unsupported by the evidence. She primarily relies on our decision in *Piaskowski v. Bett*, 256 F.3d 687 (7th Cir. 2001). There we concluded that testimony that the petitioner may have been present when the victim was assaulted was not sufficient, by itself, to sustain his conspiracy conviction, and that the jury's conclusion that the petitioner conspired with other defendants to kill the victim was merely speculation. *Id.* at 692. Krol contends that, in her case as well, it was speculative to conclude that she knew that handing Martinez the gun would result in harm to Rivera. We conclude, however, that taking the evidence as a whole, the inference she suggests was not the only permissible one.

Given the deference owed to the factfinder, the Illinois Appellate Court reasonably concluded that there was sufficient evidence of Krol's intent as a matter of law. The evidence in this case is stronger than that in *Piaskowski* (a case arising under Wisconsin law). When Martinez drove Krol's vehicle to Rivera's home to confront him, Martinez asked Krol to give him a gun. The gun was in the glove box of Krol's mother's car. Krol admitted to handing Martinez the gun, which he promptly fired out the window at Rivera, shooting him in the head. After Martinez shot Rivera, Krol drove part of the way home, parked her car in her garage, and cleaned it to make it appear that it had not been outside that day. It was reasonable for the Illinois Appellate Court to conclude that a rational trier of fact could draw from this evidence the inference that Krol intended (within the meaning of the accountability statute) to aid Martinez's crime.

We freely concede, as did the district court, that there is also evidence that negates her intent: Martinez, not Krol, decided to confront Rivera at his home; Krol told Martinez to drive away before he asked for the gun; and she did not know the gun was loaded when handing it to Martinez. She also testified that she had no idea that there was a gun in the glove box of her mother's car, although other witnesses contradicted her. As the district court noted, the evidence of Krol's intent was not overwhelming, and the state trial court could have reached a different conclusion about her guilt. But

the standard for sufficiency-of-the-evidence challenges in habeas petitions is highly deferential. We may not reweigh the evidence; rather, we must decide only whether the state appellate court's conclusion that sufficient evidence supported the conviction was objectively unreasonable. See *Saxon*, 873 F.3d at 988. Krol has not met that burden.

For these reasons, we AFFIRM the district court's denial of Krol's petition for a writ of habeas corpus.