**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 14, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SONNY LAUREN HARMON, SR.,

Petitioner - Appellant,

v.

TRACY McCOLLUM, Warden,

Respondent - Appellee.

No. 16-6080
(D.C. No. 5:10-CV-00016-C)
(W.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **BRISCOE, GORSUCH** and **McHUGH**, Circuit Judges.

Pro se litigant[1] Sonny Lauren Harmon seeks a Certificate of Appealability

(COA) from the district court's denial of habeas corpus relief from his state

convictions. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we deny a

COA, deny Harmon's motion to proceed in forma pauperis, and dismiss the

matter.

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

[1] Because Harmon appears pro se, we construe his filings liberally, see, e.g., Garza v. Davis, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010), but we do not craft arguments or otherwise advocate for him, see Yang v. Archuleta, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

# I

The convictions at issue arise from Harmon and his son Tommy breaking into and stealing items from a home, a school, and a farm-supply store in 2001. Harmon was convicted in Garvin County, Oklahoma of three counts of second degree burglary and one count of felonious possession of a firearm. Harmon also pled guilty in Pontotoc County to knowingly concealing property which was stolen in those burglaries.[2] For reasons not relevant here, Harmon's Garvin County convictions were vacated and remanded for a new trial. In 2006, upon remand, Harmon was again convicted of three counts of second degree burglary, after a bench trial. Harmon again appealed his convictions, alleging nine errors of state and federal law. The OCCA affirmed the convictions and sentence.

Harmon initiated post-conviction proceedings in Garvin County state court in 2009. In his post-conviction application for relief, Harmon raised eight new issues in addition to the nine issues raised in his direct appeal. The state trial court appointed counsel for Harmon and held an evidentiary hearing, but denied Harmon's application. Harmon filed a notice of intent to appeal on September 8, 2009. His counsel was then permitted to withdraw, and the court appointed the Oklahoma Indigent Defense System (OIDS) to represent Harmon in the post-conviction appeal to the OCCA. On September 22, OIDS filed a motion with the

---

[2] The Pontotoc County conviction is not challenged here, but is relevant to the issues raised in Harmon's request for a COA.

OCCA to withdraw, citing Harmon's ineligibility for the service at that stage of the litigation. On October 9, after Harmon's thirty-day period to file his petition expired without filing his petition, the OCCA dismissed Harmon's case on procedural grounds. It did not rule on OIDS's motion to withdraw, stating the motion was moot. The OCCA instructed Harmon that he could file an application in the Oklahoma trial court for a post-conviction appeal out of time if he could show that his default was through no fault of his own. Harmon did not immediately file for an appeal out of time.

Instead, in 2010, Harmon filed a petition for habeas corpus relief in federal district court pursuant to 28 U.S.C. § 2254. In his petition, he asserted his original nine claims of error from his direct appeal of his bench trial, as well as his additional eight claims raised in post-conviction proceedings. The State moved for dismissal of the post-conviction claims because Harmon failed to exhaust those claims before the OCCA. The district court, concerned about OIDS's withdrawal from the post-conviction appeal, administratively closed the habeas proceedings to allow Harmon to exhaust his state-court remedies and seek an appeal out of time in Oklahoma state court.

Harmon then filed a motion for appeal out of time in Garvin County state court. The court found that he had been denied his post-conviction appeal through no fault of his own and permitted Harmon to file an out-of-time post-conviction appeal in the OCCA. Harmon was given thirty days to file this appeal,

3

but failed to do so. Over the next two years, however, Harmon filed a series of motions for writs of mandamus in Garvin County and the OCCA, seeking various forms of relief from his default. These motions were unsuccessful, and the OCCA ruled in 2012 that Harmon abandoned his out-of-time post-conviction appeal, and therefore had exhausted his available state remedies.

Following these rulings, the federal district court reopened Harmon's habeas proceedings. A magistrate judge prepared a report and recommendation, recommending Harmon's petition be denied, which the district court adopted. Harmon filed a request for a COA from the district court and a motion to proceed in forma pauperis, which were both denied. The district court also certified that the appeal was not taken in good faith. Harmon now seeks a COA from this court.

## II

Harmon cannot appeal the district court's denial of his petition for habeas relief "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). In a § 2254 petition for habeas relief from a state court conviction, "[w]e look to the District Court's application of [§ 2254] to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason," including the district court's denial of a habeas

4

petition on procedural grounds. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000). If the state court did not decide the issue on the merits, and the claim is not procedurally barred, "the district court then decides the issue in the first instance, and we review its conclusions of law de novo and its findings of fact for clear error." Fairchild v. Trammel, 784 F.3d 702, 712 (10th Cir. 2015).

### III

For purposes of his request for a COA, Harmon has waived six of the seventeen grounds[3] for habeas relief he asserted in the district court. Eleven grounds for relief remain: seven issues first raised in Harmon's direct appeal to the OCCA, and four issues first raised in his post-conviction proceedings.

### A. *Ground 1: Admission of Prior Conviction*

Harmon argues that his burglary convictions should be reversed because the trial court admitted evidence of his prior conviction for knowing concealment of stolen property, in violation of Oklahoma evidentiary rules. Admission of prior bad act evidence under state-law rules has "no part of a federal court's habeas review of a state conviction," Estelle v. McGuire, 502 U.S. 62, 67 (1991), unless the error "resulted in a fundamentally unfair trial," Knighton v. Mullin, 293 F.3d

---

[3] Harmon expressly waived Grounds 7, 8, 12–14, and 16. Aplt. Br. at 22, 26. We have retained the original numbering of his claims for purposes of continuity with prior proceedings.

1165, 1171 (10th Cir. 2002).

Here, although Harmon mentions the Fourteenth Amendment in passing, he does not argue that admission of his prior conviction resulted in fundamental unfairness. Nor can we discern any fundamental unfairness from the record. Harmon's conviction for concealing property stolen in the alleged burglaries was only one piece of probative evidence in the trial, alongside testimony from various witnesses and stolen property found in Harmon's possession. Harmon has therefore failed to make a substantial showing of the denial of a constitutional right on this ground.

*B. Ground 2: Double Jeopardy*

Harmon argues that his burglary convictions violated an Oklahoma statutory prohibition on "double punishment" and the Fifth Amendment protection against double jeopardy. As with Ground 1, habeas relief is not available for Harmon's state-law claim. The OCCA did not reach the merits of this issue, finding that Harmon failed to present any record of his Pontotoc County conviction and the court was unable to "inquire into the relationships between the crimes." ROA at 23 n.1.

The district court also disposed of this claim on procedural grounds, agreeing with the OCCA that Harmon failed to follow Oklahoma procedural rules for providing adequate reference to the record to support his arguments. Id. at 561–63 (citing OCCA Rule 3.5(A)(5) & (C)(1)). Harmon argues that his

6

counsel's failure to submit the necessary documentation from his Pontotoc County conviction constituted ineffective assistance of counsel, and therefore constitutes good cause for his default.

Even if we were to excuse Harmon's procedural default, reasonable jurists would not debate that his burglary convictions did not subject him to double jeopardy. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Brown v. Ohio, 432 U.S. 161, 166 (1977) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)). "This test emphasizes the elements of the two crimes . . . 'notwithstanding a substantial overlap in the proof offered . . . .'" Id. (quoting Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975)).

Harmon argues that his Pontotoc County conviction for knowing concealment of stolen property is a lesser-included offense of second degree burglary, thereby barring the burglary prosecution. However, an examination of the elements of each crime reveals that each crime requires elements the other does not. The elements of knowing concealment of stolen property are that a person (1) "conceals, withholds, or aids in concealing or withholding" from the owner, (2) "any personal property of any value whatsoever that has been stolen, embezzled, obtained by false pretense or robbery," (3) "knowing or having

7

reasonable cause to believe the same to have been stolen, embezzled, obtained by false pretense, or robbery." Okla. Stat. tit. 21, § 1713. The elements of second degree burglary are that a person (1) "breaks and enters any building or any part of any building . . . , in which any property is kept" (2) "with intent to steal any property therein or to commit any felony." Id. at § 1435. The crime of concealing stolen property does not require any breaking or entering, or intent to commit any felony. Second degree burglary does not require any concealment of stolen property from the owner. Thus, even though these charges arose from the same events, reasonable jurists would not debate that the charges are separate and distinct. Harmon has therefore failed to make a substantial showing of the denial of a constitutional right.

*C.  Ground 3: Right of Confrontation*

Harmon argues that certain limitations placed on his trial counsel's cross-examination of Tommy Harmon violated the Confrontation Clause of the Sixth Amendment. The OCCA found no Confrontation Clause violation because Harmon's counsel was permitted to inquire as to whether Tommy had an agreement with the state to offer favorable testimony in exchange for lenient treatment on his own charges. The district court concluded that the OCCA's determination was consistent with Supreme Court precedent.

The Supreme Court has "recognized that the exposure of a witness'[s] motivation in testifying is a proper and important function of the constitutionally

8

protected right of cross-examination." Davis v. Alaska, 415 U.S. 308, 316–17 (1974). But, the Confrontation Clause does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (holding that the right of confrontation was violated by "cutting off all questioning about an event . . . that a jury might reasonably have found furnished the witness with a motive for favoring the prosecution in his testimony"); see also United States v. Mullins, 613 F.3d 1273, 1283–84 (10th Cir. 2010) (finding no Confrontation Clause violation where defendant's counsel "was allowed extensive cross-examination into [the witness's] cooperation agreement with the government," but was not permitted to ask about specific charges brought against the witness).

Harmon has failed to make a substantial showing of the denial of his right to confrontation. At trial, Tommy Harmon testified in detail regarding Harmon's involvement in the three burglaries. On cross-examination, Harmon's counsel asked Tommy if his testimony was exchanged for favorable treatment on his own charges. The prosecution objected, noting that unconvicted charges were

9

unavailable for impeachment purposes, and that Tommy had the right not to incriminate himself. ROA at 531. Counsel and the court agreed, however, that defense counsel was entitled to ask about "any kind of deals" resulting from his testimony. Id. The trial court instructed Harmon's counsel that she "may inquire as to matters that may reflect on any deals that may have been made, but . . . not to inquire as to . . . matters that are pending but not adjudicated" for purposes of impeachment. Id. at 532. Harmon's counsel proceeded to ask Tommy if he had matters pending against him, and he admitted that he did. She then asked: "Have you talked to anybody, law enforcement, any of the district attorney's offices or anybody about any kind of deals that might be made in reference to those charges if you come over here to testify today?" Id. Tommy replied "No." Id. When counsel asked about the specific nature of the charges pending against him, Tommy asserted his right against self-incrimination, and the trial court directed him not to answer. Counsel for the state interjected to inform the court that he had spoken to Tommy's attorney, and "advised [her] that if I believed . . . that Tommy Harmon had testified truthfully today, I would relate that" to the district attorney prosecuting Tommy's charges. Id. at 534.

The record therefore demonstrates that Harmon was permitted to elicit testimony regarding Tommy's motivations for testifying, and the trial court exercised reasonable discretion by prohibiting Harmon from inquiring further into the nature of charges against Tommy. Moreover, the state clarified that it had

10

spoken to Tommy's counsel regarding Tommy's testimony, and the court was able to take that fact into consideration.

*D. Ground 4: Admission of Tommy Harmon's Testimony*

Harmon argues that the trial court's denial of his motion to strike Tommy Harmon's testimony violated Oklahoma discovery rules and his Due Process rights.[4] As with Harmon's other state-law arguments, we will not consider whether the trial court abused its discretion under Oklahoma procedural rules.

Harmon argues that he was unable to thoroughly impeach Tommy Harmon based on Tommy's prior perjury conviction and other pending charges. As we understand, Harmon argues that due process required that Tommy's entire testimony be stricken as a result. But he does not point us to any such due process requirement. Moreover, the record shows that, although the court did not permit cross-examination on unconvicted charges, nothing prevented counsel from questioning Tommy regarding his perjury conviction. To the contrary, as Harmon freely admits in his brief, the state introduced evidence of the conviction. Thus, Harmon has failed to make a substantial showing that he was denied due

---

[4] The district court resolved this issue based on anticipatory procedural default, concluding that Harmon failed to raise this argument before the OCCA and would be barred from doing so now. Although the OCCA's opinion only discusses Oklahoma rules, Harmon argued in his brief to the OCCA that reliance on the testimony "of an accomplice and the inability to attack [that] accomplice's credibility," "deprived [him] of a fair trial and due process of the law." ROA at 287 (citing U.S. Const. amend. XIV). We therefore conclude that although the OCCA did not decide this issue on the merits, Harmon did not default it.

11

process by the district court's refusal to strike the entirety of Tommy's testimony.

E. *Ground 5: Failure to denominate Tommy and Sunny Dawn Harmon as "accomplices" under Oklahoma procedural law*

Harmon argues that the trial court erred by not complying with Oka. Stat. tit. 22, § 742, which requires corroboration of accomplice testimony in a criminal trial. However, this argument rests entirely on state law. The only reference to federal law is an argument that the statute "is a safeguard to the due process rights of the accused," and that "Harmon was denied a fair and impartial trial under the . . . [Fourteenth] Amendment[]." Aplt. Br. at 20. But the Supreme Court has not recognized a requirement for independent corroboration of accomplice-witness testimony. See Cummings v. Sirmons, 506 F.3d 1211, 1237–38 (10th Cir. 2007). And "[a] federal court may not issue the writ on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37, 41 (1984). Nor was the OCCA's determination on its own state law "so arbitrary or capricious as to constitute an independent due process . . . violation." Lewis v. Jeffers, 497 U.S. 764, 780 (1990); ROA at 25 ("[T]he judge as the trier of fact was aware of the corroboration requirement and factored that aspect of the law into his evaluation of Tommy and Sunny Dawn's testimony.").

F. *Ground 6: Sufficiency of the Evidence*

Harmon argues that the State did not present sufficient evidence to support his conviction because Tommy and Sunny Dawn Harmon's testimony should have

12

been ignored, and that the remaining evidence was insufficient to support a conviction. Due Process guarantees that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 316 (1979). The Supreme Court has "made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012). "First, on direct appeal, . . . '[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'" Id. (quoting Cavazos v. Smith, 132 S. Ct. 2, 4 (2011)). "[S]econd, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because [it] disagrees with the state court.'" Id. (quoting Cavazos, 132 S. Ct. at 4). "The federal court instead may do so only if the state court decision was objectively unreasonable." Id. (quoting Cavazos, 132 S. Ct. at 4).

Here, the OCCA concluded that "the evidence in this case was more than adequate for any rational trier of fact to find the essential elements of second-degree burglary beyond a reasonable doubt." ROA at 27. Even if Tommy Harmon's testimony is discounted, the OCCA concluded that Sunny Dawn Harmon's testimony was sufficient to support Harmon's convictions. Sunny

13

Dawn testified that she overheard Sonny and Tommy's plans for the burglaries, listened to their accounts of the burglaries afterward, and helped them store stolen items. Alternatively, even if Sunny Dawn was also deemed an accomplice, the OCCA concluded that her testimony was sufficiently corroborated by testimony from additional witnesses and stolen items discovered in Harmon's possession.

Reasonable jurists would not debate that the OCCA's resolution of this issue on the merits was objectively reasonable, and Harmon has therefore failed to make a substantial showing of the denial of a constitutional right on this ground.

*G. Ground 9: Invalid Consent to Search*

Harmon argues that the trial court violated his Fourth Amendment rights by admitting evidence obtained during an illegal search of his mother's home. He claims that his mother only allowed the officers to search because she was submitting to the officers' authority, rather that knowingly and voluntarily consenting.

The OCCA reviewed this claim for plain error, noting that Harmon failed to object to this evidence at his trial. But, even assuming the stolen items discovered during this search should have been suppressed, the OCCA concluded that "the remaining items of stolen property that were lawfully obtained elsewhere so strongly linked Harmon to the alleged burglaries that there is *no doubt* that the trial would have produced anything other than a guilty verdict." ROA at 30

14

(emphasis added).

Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976) (footnotes omitted). The OCCA's language mirrors that of the federal constitutional standard for harmless error applicable here, and we conclude that court rejected Harmon's argument on the merits after full and fair consideration.[5] See Chapman v. California, 386 U.S. 18, 24 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."); Douglas v. Workman, 560 F.3d 1156, 1171, 1177–78 (10th Cir. 2009) ("[W]hen a state court applies plain error review in disposing of a federal claim, the decision is on the merits to the extent that the state court finds the claim lacks merit under federal law, rather than procedurally barred."). Harmon has therefore failed to make a substantial

_____

[5] Harmon argues that he was not afforded a full and fair opportunity to litigate this issue because the OCCA was not presented with a full record. However, according to court records, the OCCA was provided the full trial record before considering Harmon's direct appeal. Harmon points to two affidavits from his mother which were not part of the trial record, and which the OCCA declined to accept as a supplement to the record. Even if considered, these affidavits are not helpful to Harmon because the OCCA resolved the issue on harmless error grounds, rather than determining if the fruits of the search should have been suppressed.

showing of the denial of a constitutional right on this ground.

*H. Grounds 10 through 17: Post-Conviction Arguments*

Harmon has waived Grounds 12, 13, 14, and 16, but continues to press Grounds 10, 11, 15, and 17. Because these claims are procedurally barred, we deny a COA on these issues.[6]

Harmon first asserted these grounds in his post-conviction proceedings in Garvin County district court. After the Garvin County court denied his petition, Harmon failed to timely file an appellate petition or a brief in support to the OCCA within the thirty days prescribed in OCCA Rule 5.2(C). For that reason, the OCCA dismissed his case, but instructed him that Rule 2.1(E) might permit him an out-of-time appeal.

Harmon returned to Garvin County court to request an out-of-time appeal, but only after the district court stayed his intervening habeas petition. The state court concluded that Harmon's default was no fault of his own, but rather resulted from OIDS's withdrawal during the post-conviction appeal. Harmon was given thirty days to file an appeal out of time with the OCCA. Harmon defaulted a second time by failing to file his appeal. The OCCA therefore determined that Harmon "abandoned the opportunity to appeal the judgment . . . denying him

---

[6] The substance of these claims relates to ineffective assistance of counsel at various stages of Harmon's case (Grounds 10 and 11), lack of a complete record in his direct appeal (Ground 15), and cumulative error (Ground 17).

16

post-conviction relief," and "has now exhausted his state remedies on these claims." ROA at 177–78.

"Federal habeas courts generally refuse to hear claims 'defaulted . . . in state court pursuant to an independent and adequate state procedural rule,'" Johnson v. Lee, No. 15-789, 2016 WL 3041051, at *1 (U.S. May 31, 2016) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)), "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," Coleman, 501 U.S. at 750. Harmon does not challenge the independence or adequacy of the Oklahoma rules, but he argues that he has cause for his default.[7]

"[C]ause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." Id. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 492 (1986)). For example, "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials made compliance

---

[7] Although Harmon mentions actual innocence briefly in some of his substantive arguments, see Aplt. Br. at 8, 22, he does not argue that he is actually innocent for purposes of the "fundamental miscarriage of justice" exception to procedural default. See Murray v. Carrier, 477 U.S. 478, 496 (1986); House v. Bell, 547 U.S. 518, 522 (2006) ("In certain exceptional cases involving a compelling claim of actual innocence, however, the state procedural default rule is not a bar to a federal habeas corpus petition.").

17

impracticable." Id. at 753 (quoting Murray, 477 U.S. at 488).

First, Harmon argues that his default was "forced" by OIDS's withdrawal from his initial post-conviction appeal. We construe this statement, in conjunction with his substantive arguments regarding assistance of counsel, as an argument that the ineffectiveness of his counsel constitutes cause for his default. Despite Harmon's "position . . . that it was the duty of the State OIDS to conduct the [a]ppeal out of [t]ime," Aplt. Br. at 32, the Sixth Amendment does not provide a right to counsel in state post-conviction proceedings, Coleman, 501 U.S. at 725. But ineffective assistance of counsel may still provide cause for procedural default in certain circumstances. See Martinez v. Ryan, 132 S. Ct. 1309, 1316–17 (2012); Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Here, even if Harmon was provided ineffective assistance in his first post-conviction appeal, there were no illusions that he was represented by counsel during his later opportunity for a post-conviction appeal out of time. The record shows no appointment by the district court of any appellate counsel at that stage. Therefore, ineffective assistance of counsel does not provide cause for Harmon's procedural default.

Second, Harmon attempts to explain his failure to file his post-conviction appeal out of time by arguing that filing the appeal would have been "senseless" and "futile" without certain records he requested from the State but did not receive. Aplt. Br. at 26; ROA at 66–67, 161–62. But, even if Harmon's perceived futility could constitute cause for default, he has not demonstrated that

18

the absence of any of the documentation he requested could have any effect on his claims, much less render them futile. For one, Harmon sought transcripts and records from a suppression hearing prior to his trial. However, Harmon did not seek suppression of the evidence he now challenges, and there is therefore no record of a suppression hearing on this evidence.[8] The suppression records therefore have no bearing on Harmon's instant Fourth Amendment argument. Harmon also requested the full trial record of his conviction in Pontotoc County for concealment of stolen property. He argues these records are essential to his double jeopardy claim. But the details of the proceedings in Pontotoc County are not necessary to compare the elements of the crimes charged, and therefore not necessary to evaluate Harmon's constitutional claim. Finally, Harmon argues that pursuing his OCCA post-conviction appeal out of time would have been futile because he had not received a full transcript of his trial. But the record contains relevant excerpts from the trial transcripts, and Harmon has not indicated that any content outside of these excerpts bears on any of his claims. Additionally, court records show that the full trial transcripts were transmitted to the OCCA during his direct appeal, as well as sent to his counsel during his direct appeal.

---

[8] In the instant case, Harmon argues that evidence obtained during a consensual search of his mother's home should have been suppressed. But the suppression hearing at trial related only to a different search of the home, days earlier, under color of a search warrant. Harmon was successful in suppressing that warrant and the fruits of that first search.

19

Consequently, Harmon has failed to demonstrate cause to excuse his procedural default.

## IV

Harmon's request for a COA is denied. Because the district court certified that this appeal is not taken in good faith, the motion to proceed in forma pauperis is also denied,[9] and the matter is dismissed.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[9] See 28 U.S.C. § 1915(a)(3) ("An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.")