**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHRISTOPHER WAYNE WEBB,

     Petitioner - Appellant,

v.

JOE ALLBAUGH,

     Respondent - Appellee.

No. 16-7072
(D.C. No. 6:13-CV-00265-RAW-KEW)
(E.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **LUCERO**, **O'BRIEN**, and **MORITZ**, Circuit Judges.
_____

Christopher Webb, an Oklahoma prisoner proceeding pro se,[1] seeks a certificate of appealability (COA) to appeal the district court's denial of his 28 U.S.C. § 2254 habeas application and his subsequent Fed. R. Civ. P. 60(b) motion. To obtain a COA, Webb must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because he hasn't made this showing, we deny his COA application and dismiss this matter.

---

[*] This order isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

[1] We liberally construe pro se pleadings. But we do not act as an advocate for pro se litigants. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## I

In July 2009, the State of Oklahoma charged Webb with one count of second-degree rape by instrumentation. *See* Okla. Stat. tit. 21, § 1111.1 (2008) (defining rape by instrumentation); *id.* § 1114(B) (classifying rape by instrumentation as second-degree rape unless (1) bodily harm occurs or (2) victim is under 14 years of age). To prove this offense, the state had to establish, beyond a reasonable doubt, that Webb penetrated the anus or vagina of the victim who was under the age of 16 years, that he did so with an inanimate object or body part other than his penis, and that he did so without the victim's consent. *See* Okla. Unif. Jury Instr. CR 4-127 (listing elements of second-degree rape by instrumentation).

At Webb's November 2009 preliminary hearing, A.S. testified that she was 14 years old; that in the summer of 2009 she was with Webb—her mother's then-boyfriend—at Shannon Billey's house; that she fell asleep after several days of being high on "dope"; and that when she woke up, Webb's fingers were inside her vagina. R. vol. 2, 15. The state court found probable cause to bind Webb over for trial and Webb's case was tried to a jury in January 2012.

At trial, A.S. testified that during the summer of 2009, when she was 14, she would "hang out and do drugs" with Webb. *Id.* at 132. But A.S. responded, "No," when the prosecutor asked her if Webb ever touched her at Shannon Billey's house. *Id.* at 134. And A.S. replied, "Nope," when the prosecutor asked her if she ever woke up in bed with Webb. *Id.* A.S. also claimed not to remember whether she gave contrary testimony at the preliminary hearing, explaining that she was "high that day that [she] testified." *Id.* A.S.

2

further denied telling a forensic interviewer that she woke up with Webb's fingers in her vagina.

After the prosecutor recited A.S.' preliminary hearing testimony concerning the incident with Webb, A.S. testified that she recalled providing her preliminary hearing testimony. But when the prosecutor asked if her preliminary hearing testimony was true, A.S. inquired, "Do I have to answer that?" *Id.* at 136. Finally, the prosecutor directly asked A.S. if A.S. woke up with Webb's fingers in her vagina. A.S. refused to answer.

Following a brief recess, A.S. testified that her preliminary hearing testimony was true, and that she told an investigator with the District Attorney's Office, David Cathey, and a forensic interviewer, Ange Edwards, about the incident. When defense counsel asked A.S. what she told Edwards, A.S. replied, "I'm not repeating myself"; punctuated her refusal with profanity; and testified that she only showed up for trial because Cathey threatened her with "jail" or "very bad consequences" if she refused. *Id.* at 149-50. Cathey also testified at trial, but he denied threatening A.S.

A.S.' mother testified for the State that she would allow A.S. to go to Shannon Billey's house and that she was "pretty sure" that A.S. was using drugs at the time. *Id.* at 165. The state also presented testimony from C.O. and her cousin, A.A. Both witnesses claimed that when they were between the ages of 10 and 12, they lived with Webb—who was then the live-in boyfriend of C.O.'s mother—and that Webb molested them.

After the state rested, Webb moved for a directed verdict. He argued that A.S.' testimony wasn't "strong enough to support a conviction." *Id.* at 229. In denying the motion, the trial court stated, "Certainly if the jury were to believe her testimony beyond

a reasonable doubt it wouldn't support a conviction. And it hasn't been corroborated by other evidence, so the Motion for Directed Verdict and/or a Motion of Acquittal is denied, exception allowed." *Id.* at 229.

Webb's cousins Shannon Billey and Brandy Billey testified as defense witnesses. Shannon testified that Webb would frequently visit her home during spring and summer 2009, and that Webb was present when A.S. spent the night on one occasion during that time period. She also testified that she never saw Webb touch A.S. inappropriately and that A.S. never told her that Webb touched her inappropriately.

Brandy—who is also A.S.' former stepmother—testified that A.S. never told her during spring and summer 2009 that Webb touched her inappropriately. Brandy also testified that about a year before the trial, A.S. told Brandy that Webb never touched A.S.

The state presented one rebuttal witness over Webb's objection. Salomon Pedraza testified that he lived with Shannon Billey during spring and summer 2009 and that A.S. spent the night on one occasion when Webb was there. He recalled that A.S. and Webb "were carrying on and talking real loud" in the living room when he was trying to sleep and that he asked them to quiet down. *Id.* at 252. The next morning, Pedraza saw Webb and A.S. talking in the bedroom by the kitchen. Pedraza testified that he didn't see Webb and A.S. doing anything inappropriate at that time.

Webb didn't renew his motion for a directed verdict at the close of all evidence, nor did he object to the court's proposed jury instructions.

4

The jury found Webb guilty and recommended a 30-year prison sentence. Webb waived his right to a presentence report and the trial court immediately imposed a 30-year prison sentence.

Webb filed a direct appeal, arguing that (1) the trial court violated his constitutional right to a speedy trial, (2) the state presented insufficient evidence to support his conviction, and (3) the trial court imposed an excessive sentence. Regarding his sufficiency-of-the-evidence claim, Webb primarily attacked the strength and credibility of A.S.' testimony. He also cited the trial court's statements in denying his motion for directed verdict as a strong indication that the evidence was insufficient to support his conviction. Additionally, he asserted that the jury's verdict could only be explained by the admission of other-crimes evidence.

In affirming Webb's conviction and sentence, the Oklahoma Court of Criminal Appeals (OCCA) first applied *Barker v. Wingo*'s four-factor balancing test to Webb's speedy-trial claim. *See* 407 U.S. 514, 530 (1972). The court determined that three of the four factors—the reasons for the delay, Webb's assertion of his speedy trial right, and prejudice—weighed against Webb, whereas only one factor—the length of the delay—weighed against the state. Next, the OCCA applied *Jackson v. Virginia*, 443 U.S. 307 (1979), and found that while the trial evidence "was not overwhelming, it was sufficient for a reasonable trier of fact to find beyond a reasonable doubt that Webb committed the crime of rape by instrumentation." R. vol. 1, 25 (citing *Spuehler v. State*, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985), which relied on *Jackson*). Finally, the OCCA reasoned

5

that Webb's sentence wasn't excessive because it fell within the statutory range and didn't shock the conscience.

## II

Webb then sought federal habeas relief. He ultimately filed an amended § 2254 habeas application, generally reasserting the same three claims he raised on direct appeal: (1) the state violated his Fifth and Fourteenth Amendment due process rights by convicting him without sufficient evidence, (2) the trial court violated his Sixth Amendment right to a speedy trial, and (3) the trial court violated the Eighth Amendment by imposing an excessive sentence.[2] Because the OCCA adjudicated each of Webb's claims on the merits, Webb had to demonstrate to the district court that the OCCA's adjudication of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]; or . . . that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)-(2).

After thoroughly reviewing the trial evidence, the district court determined that the OCCA's decision on the sufficiency-of-the-evidence claim (1) was neither contrary to, nor an unreasonable application of, *Jackson*[3] and (2) wasn't based on an unreasonable

---

[2] Webb first filed a habeas application asserting four grounds for relief—i.e., the same three claims he asserted on direct appeal plus an ineffective-assistance-of-counsel claim. He later moved to add four additional grounds for relief. The magistrate judge construed his motion as a motion to file an amended habeas application and granted him leave to amend. Webb then filed the amended application, in which he generally asserted the same three grounds for relief that he raised in his direct appeal.

[3] As noted, the OCCA didn't directly cite *Jackson*. But it did cite OCCA precedent that relied on *Jackson*. Thus, the district court correctly applied § 2254(d)(1) in reviewing

6

determination of the facts. Then, after carefully detailing the events leading up to Webb's trial, the court concluded the OCCA's analysis of the constitutional speedy trial claim "was consistent with Supreme Court law, and . . . was not based on an unreasonable determination of the facts." R. vol. 1, 353-54. The court noted that most of the delay was attributable to Webb's own actions. The court also rejected Webb's assertions that the delay was prejudicial, reasoning that Webb failed to cite any specific testimony that he claimed was lost through the death of witnesses.

Finally, the court determined that Webb failed to identify a federal constitutional violation based on the length of his sentence—30 years—that fell within the state statutory range of punishment for his offense—20 years to life. *See Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) (explaining that challenges to state sentencing decisions generally aren't cognizable on federal habeas review "unless . . . the sentence imposed is outside the statutory limits or unauthorized by law"). For these reasons, the district court denied habeas relief and declined to issue a COA.

A few weeks later, Webb filed a Rule 60(b) motion. As relevant to his COA application, Webb asserted that the district court (1) failed to review the sufficiency of the evidence de novo, and (2) overlooked his argument that A.S.' testimony wasn't clear and convincing as required for uncorroborated testimony. Webb further asserted that the court failed to address his claims that the trial court (1) erroneously denied his motion for a directed verdict after expressly finding the trial evidence insufficient to support a

---

the sufficiency-of-the-evidence claim. *See Turrentine v. Mullin*, 390 F.3d 1181, 1203 (10th Cir. 2004).

7

conviction and (2) should have sua sponte instructed the jury that it could acquit him based on insufficient evidence.[4]

The district court ultimately denied Webb's Rule 60(b) motion. First, the court noted that it properly considered the sufficiency of the evidence by applying the *Jackson* standard. And the court once again reviewed the trial evidence under that standard, particularly A.S.' testimony, and affirmed its prior determination as to the sufficiency of the evidence.

Next, the court addressed Webb's directed-verdict and jury-instruction arguments. In doing so, the court noted that although Webb mentioned the denial of his motion for a directed verdict in his direct appeal brief as further support for his challenge to the sufficiency of the evidence, Webb didn't raise either argument as a separate issue on direct appeal. The court nevertheless considered both of Webb's unexhausted claims de novo. *See* § 2254(b)(2) (providing that federal habeas court can deny habeas application on merits notwithstanding applicant's failure to exhaust state remedies); *Williams v. Jones*, 571 F.3d 1086, 1090 (10th Cir. 2009) (noting that when state court has not adjudicated claim on the merits federal habeas court reviews claim de novo).

The court expressly referenced the trial court's oral ruling on the motion for directed verdict, wherein the trial court stated that A.S.' testimony, if believed, "wouldn't support a conviction" and "ha[d]n't been corroborated by other evidence," immediately

---

[4] While his Rule 60(b) motion was pending, Webb initiated an appeal from the district court's order denying his habeas application. This court abated the appeal pending the district court's decision on the Rule 60(b) motion.

8

before the trial court denied the motion. *Id.* at 408 (quoting R. vol. 2, 228-29). And the court acknowledged "the apparent inconsistency between the trial court's statement that the victim's uncorroborated testimony wouldn't support a conviction, even if the jury believed her beyond a reasonable doubt, and that court's denial of the motion for a directed verdict." *Id.* But the court rejected Webb's directed-verdict and jury-instruction arguments for three reasons.

First, the court rejected Webb's assertion that state law required the trial court to direct a verdict or instruct the jury on acquittal. The court reasoned that, contrary to Webb's reading of state law, a trial court's decision to direct a verdict is discretionary. *See* Okla. Stat. tit. 22, § 850 ("If, at any time after the evidence on either side is closed, the court deem[s the evidence] insufficient to warrant a conviction, it may advise the jury to acquit the defendant.").

Second, the court determined that even if the trial court abused its discretion under state law by failing to direct a verdict and instruct the jury on acquittal, those state-law violations wouldn't necessarily give rise to a cognizable habeas claim. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Third, the court concluded that neither the denial of the motion for a directed verdict nor the failure to sua sponte instruct the jury it could acquit him violated Webb's due process rights because he failed to demonstrate that the evidence was insufficient to

9

support his conviction. *See Tiger v. Workman*, 445 F.3d 1265, 1267 (10th Cir. 2006) (explaining that absent constitutional mandate requiring particular jury instruction, "a habeas petitioner must show that, in the context of the entire trial, the error in the instruction was so fundamentally unfair as to deny the petitioner due process"); *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000) (explaining that *Jackson* standard applies "[i]n reviewing both the sufficiency of the evidence to support a conviction and a denial of a motion for judgment of acquittal").

### III

Webb now seeks a COA to appeal the district court's denial of his habeas application and his Rule 60(b) motion.[5] *See* 28 U.S.C. § 2253(c)(1)(A) (requiring state prisoner appealing denial of § 2254 application to obtain COA); *Spitznas v. Boone*, 464 F.3d 1213, 1218 (10th Cir. 2006) (holding that prisoner appealing denial of Rule 60(b) motion in habeas case generally must obtain COA). Because the district court rejected Webb's constitutional claims on the merits, we will issue a COA only if Webb shows "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Our task in determining whether to grant a COA isn't to consider the merits of Webb's constitutional claims de novo. Rather, our review is limited to "an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). And because the Antiterrorism and Effective Death

---

[5] We grant Webb's motions to supplement his combined opening brief and COA application.

10

Penalty Act of 1996 (AEDPA), applies here, "we keep in mind that when a state court previously adjudicated the merits of a claim, a federal court may grant habeas relief only if that state court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" *Davis v. McCollum*, 798 F.3d 1317, 1319 (10th Cir. 2015) (quoting § 2254(d)(1)), "or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" *id.* (quoting § 2254(d)(2)). But AEDPA deference only applies to those claims that the state court "adjudicated on the merits." § 2254(d).

Thus, in deciding whether to grant a COA, we make a "threshold inquiry [that] does not require full consideration of the factual or legal bases adduced in support of the claims," *Miller-El*, 537 U.S. at 336, and to the extent the state court adjudicated any of the claims on the merits, we "incorporate 'AEDPA's deferential treatment of state court decisions . . . into our consideration of [Webb's] request for [a] COA,'" *Davis*, 798 F.3d at 1319 (quoting *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004)).

**A**

Webb first asserts that the district court failed to consider his claim that the trial court's denial of his motion for a directed verdict violated his Fifth Amendment right to be free from double jeopardy. And according to Webb, he therefore shouldn't be required to obtain a COA before we can consider the merits of his claim. We agree that the district court didn't address this particular claim. But the reason is simple. Webb didn't present

11

this claim to the district court—either in his habeas application or in his Rule 60(b) motion.

Instead, in his habeas application, Webb asserted an undeveloped double-jeopardy claim arising from the trial court's admission of other-crimes evidence. The district court denied habeas relief on this claim because it was cursory, unexhausted, and subject to an anticipatory procedural bar, and because Webb failed to allege any excuse for failing to challenge the admission of other-crimes evidence on direct appeal. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Woodruff v. State*, 910 P.2d 348, 350 (Okla. Crim. App. 1996) ("Issues which were not raised on direct appeal, but could have been raised are waived."); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (explaining cause-and-prejudice showing necessary to overcome anticipatory procedural bar).

Likewise, in his Rule 60(b) motion, Webb suggested only that the OCCA and the district court violated his due process rights and "attached jeopardy" by determining the evidence was sufficient to support his conviction after the trial court stated that same evidence was insufficient. R. vol. 1, 364.

But Webb now argues something different: he asserts that the *trial court* violated his right to be free from double jeopardy when it suggested the evidence was insufficient but then denied his motion for a directed verdict and permitted the jury to convict him. According to Webb, the trial court's inconsistent ruling—i.e., its statement regarding the

insufficiency of the evidence followed by its denial of his motion for a directed verdict—

constitutes an acquittal.

Because Webb raises this particular double-jeopardy claim for the first time in his

combined COA application and appellate brief, we decline to consider it.[6] *See United*

*States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012) (stating general rule against

considering arguments raised for the first time on appeal); *see also Patrick v. Patton*, 634

F. App'x 220, 222 n.4, 223 (10th Cir. 2015) (unpublished) (applying *Viera*'s general rule

---

[6] Even if we considered Webb's claim, we would reject it. His claim might have merit if we focused only on what the trial court said. But what matters is what the trial court did. As Webb acknowledges in his statement of this issue, the trial court *denied* his motion for a directed verdict. Had the trial court *granted* the motion and then permitted the jury to convict him, Webb might have a valid habeas claim, presuming he could overcome his failure to exhaust this claim in state court. *See Smith v. Massachusetts*, 543 U.S. 462, 465-67 (2005) (concluding that trial court violated double jeopardy clause when it found evidence supporting essential element of offense insufficient, granted defendant's motion for required finding of not guilty under Massachusetts Rule of Criminal Procedure 25(a), later reconsidered and reversed its ruling, and then permitted jury to convict defendant). But the trial court denied Webb's motion for a directed verdict. And nothing in the record suggests that either the state or Webb asked the trial court to reconcile its inconsistent statements with its ultimate ruling.

Moreover, we question whether Webb could have even challenged the denial of his motion on direct appeal. After the trial court denied his motion, Webb proceeded to put on his own evidence. Under Oklahoma law, this means he waived his right to challenge the denial of the motion for directed verdict. *See Smith v. State*, 509 P.2d 1391, 1397 (Okla. Crim. Ct. App. 1973) (adopting rule that "a defendant by offering evidence after a denial of a motion for acquittal waives that motion and thereafter the question of the sufficiency of the evidence to sustain a conviction is to be determined by an examination of the entire record"). Perhaps this explains why Webb merely referenced the denial of his motion in his brief to the OCCA, and didn't frame that denial as a separate trial error, let alone fairly present it as a federal double-jeopardy claim. *See Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) ("[T]he crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971))). These circumstances bolster our decision not to consider Webb's belated attempt to recast his due process claim as a double-jeopardy claim.

and refusing to consider habeas petitioner's arguments because they were "not presented in his petition" and were instead raised for first time in his COA application).

B

Next, Webb asserts that the district court failed to adequately address his directed-verdict and jury-instruction arguments. In his habeas application, he asserted both arguments as support for his broader claim that the state violated his due process rights by convicting him based on insufficient evidence. And he again asserts that because the district court didn't rule on these arguments, he shouldn't be required to obtain a COA to raise them on appeal. We disagree with both assertions.

It's true that the district court didn't address these particular arguments in its order denying Webb's habeas application. But Webb asked the court to remedy this oversight when he filed his Rule 60(b) motion. And the court did so. In denying Webb's Rule 60(b) motion, the court expressly acknowledged that the trial court suggested the evidence was insufficient before the trial court denied Webb's motion for a directed verdict. But the district court nevertheless rejected Webb's arguments. First, it reasoned that Oklahoma law doesn't require a trial court to direct a verdict or instruct the jury on acquittal; Oklahoma law instead leaves that decision to the trial court's discretion. *See* Okla. Stat. tit. 22, § 850 (providing that trial court "may advise the jury to acquit the defendant" if court deems evidence insufficient). Second, the district court concluded that even if the trial court violated state law by failing to direct a verdict or to instruct the jury on acquittal, any such violations wouldn't necessarily give rise to a cognizable habeas claim. *See Estelle*, 502 U.S. at 67-68. Third, the court reasoned that Webb failed to demonstrate

14

a due process violation arising from the omitted jury instruction because he didn't show that the omission infected the entire trial. *See Tiger*, 445 F.3d at 1267. Finally, the court determined that Webb didn't establish a due process violation arising from the denial of his motion for a directed verdict because he didn't demonstrate that the evidence was insufficient to support his conviction. *See Wood*, 207 F.3d at 1228.

Because the district court clearly ruled on the merits of the directed-verdict and jury-instruction arguments, Webb needs a COA before we can consider whether the court properly rejected those arguments. *See Spitznas*, 464 F.3d at 1218. But we decline to grant a COA because we conclude that no reasonable jurists would debate the district court's determination that these arguments don't entitle Webb to habeas relief on his due process claim. Critically, the common thread running through Webb's directed-verdict and jury-instruction arguments (and even his newly minted double-jeopardy argument) is his belief that the evidence is insufficient to support his conviction. And, as we discuss next, we find no basis for granting Webb's request for a COA to appeal the district court's determination that the OCCA properly evaluated the evidence under the *Jackson* standard. *See Jackson,* 443 U.S. at 319.

## C

As his third issue, Webb argues that "the state's evidence is insufficient to sustain" his conviction, Aplt. Br. 21, and asserts that the district court didn't adequately address his specific complaints regarding the sufficiency of A.S.' testimony. There's no question that Webb fairly presented his sufficiency-of-the-evidence arguments to the OCCA and the district court. But Webb has a high hurdle to overcome before he can obtain habeas

relief on a challenge to the sufficiency of the evidence. *See Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (explaining that such challenges "face a high bar . . . because they are subject to two layers of judicial deference").

"First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial,'" and the appellate court "may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "[S]econd, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."'" *Id.* (quoting *Cavazos*, 565 U.S. at 2).

To clarify, the OCCA's task was to determine whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. 307, 319. And to establish the essential elements of rape by instrumentation, the state had to prove beyond a reasonable doubt that Webb penetrated A.S.' anus or vagina without her consent, that she was under 16 at the time, and that he did so with an inanimate object or body part other than his penis. *See* Okla. Unif. Jury Instr. CR 4-127 (listing elements of second-degree rape by instrumentation).

At trial, A.S. confirmed, albeit reluctantly, the substance of her preliminary hearing testimony. That testimony established every essential element of the crime—i.e.,

16

that Webb digitally penetrated A.S.' vagina without her consent when A.S. was 14 years old. *See id.*

The OCCA identified *Jackson* as the appropriate standard for evaluating the trial evidence and, applying *Jackson,* concluded that the evidence was sufficient to support Webb's conviction. Thus, the district court's task was to determine whether the OCCA's adjudication of Webb's sufficiency-of-the-evidence claim "resulted in a decision that was contrary to, or involved an unreasonable application of" *Jackson*, or "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)-(2).

The district court thoroughly considered the evidence when it denied Webb's habeas application and again when it denied his Rule 60(b) motion. Both times, the court determined that there was nothing unreasonable about either the OCCA's (or its own) application of the *Jackson* standard or the OCCA's determination of the facts in light of the evidence presented at trial. Viewing the evidence through AEDPA's doubly deferential lens, we conclude that no reasonable jurist would debate the district court's assessment or its ultimate denial of habeas relief with respect to Webb's due process claim. Thus, we deny his request for a COA on that claim.

**D**

Finally, Webb asserts that the district court failed to consider the factual support for his speedy trial claim. But we have carefully reviewed the appellate record, the OCCA's decision, the district court's assessment of this claim in its order denying habeas relief, and the applicable law. As the district court concluded, Webb's own actions

17

contributed to the bulk of the pretrial delay, and Webb failed to demonstrate that the OCCA's treatment of his speedy-trial claim "was [in]consistent with Supreme Court law," or "based on an unreasonable determination of the facts." R. vol. 1, 353-54. Because reasonable jurists wouldn't debate the district court's assessment of this claim, we also decline to issue a COA on this claim.

*    *    *

In sum, Webb hasn't shown that reasonable jurists could debate the correctness of the district court's denial of his § 2254 habeas application. *Slack*, 529 U.S. at 484. Thus, we deny his request for a COA and dismiss this matter. We also deny as moot his renewed request for appointment of counsel.

Entered for the Court

Nancy L. Moritz
Circuit Judge

18