FILED
United States Court of Appeals
Tenth Circuit

May 29, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TIMOTHY J. HILL,

      Petitioner - Appellant,

v.

JOE M. ALLBAUGH,

      Respondent - Appellee.

No. 18-6019
(D.C. No. 5:17-CV-00373-D)
(W.D. Okla.)

_____

**ORDER DENYING A CERTIFICATE OF APPEALABILITY**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

Timothy J. Hill, a prisoner in the Oklahoma Department of Corrections,

petitions for a Certificate of Appealability (COA), seeking to challenge the district

court's denial of his 28 U.S.C. § 2254 petition. We deny the COA.

**I**

Around March 2012, Hill's then-girlfriend, Stacie Lewis, gave birth to a girl,

T.H. On June 5, 2012, when T.H. was three months old, Lewis walked into the

Emergency Room of the Chickasaw Nation Medical Center in Ada, Oklahoma,

seeking medical assistance for T.H. Lewis told the medical center staff that three

_____

[*] This order is not binding precedent except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

days earlier she accidentally bumped T.H.'s head against a doorframe, and she was concerned that T.H. might still be suffering from the injury.

At the medical center, Dr. Connie Wilson noticed T.H. was having difficulty making eye contact and would not grasp a pinkie finger—both abnormal for a three-month-old. Dr. Wilson ordered a CT scan, after which Dr. Wilson recommended that T.H. be transported by ambulance to The Children's Hospital in Oklahoma City. A paramedic, Lori Morris, treated T.H. during the two-hour ambulance ride, and noticed that T.H. could not follow a finger or light, and was generally dazed.

At The Children's Hospital, doctors diagnosed T.H. with subdural hematomas, subarachnoid bleeds, damaged brain tissue, and multi-layer retinal hemorrhages involving both eyes. T.H. also had three broken ribs and two broken bones in her legs, with the injuries apparently occurring at different times.

At trial, a child abuse and Shaken Baby Syndrome expert testified that T.H.'s subdural bleeding included both old and new blood, which indicated her injuries came from multiple incidents over time. Further, the expert testified that T.H.'s injuries may have killed 20 to 30 percent of her brain cells. Altogether, the expert concluded that T.H. had been subjected to "fantastic forces over an ongoing period of time," including "multiple shaking incidents." App. at 395–96.

The State also presented evidence that T.H. weighed just 8.8 pounds when she arrived at the medical center, putting her in the bottom 3 percent of body weights for three-month-olds. In her first three days at The Children's Hospital, T.H. gained six ounces—more than double the average weight gain for a three-month-old baby over a

2

three-day period. After she was released from the hospital, T.H. stayed with a foster mother and continued to gain weight.

*Procedural history*

Hill and Lewis both spoke with the Ada Police Department in early June 2012, in the days following T.H.'s hospitalization. After Hill's interview, the State of Oklahoma charged Hill with three felony counts: child abuse by failure to protect, child abuse by injury, and child neglect. Hill hired an attorney, Blake Bostick, to defend him. The case went to trial, and a jury found Hill guilty of felony child neglect and felony child abuse by failure to protect, but acquitted him of felony child abuse by injury. The court sentenced Hill to a 35-year term of imprisonment on both counts, to be served consecutively. On direct appeal, with Bostick still representing Hill, the Oklahoma Court of Criminal Appeals (OCCA) affirmed the convictions. Thereafter, Hill filed a petition for post-conviction relief in Oklahoma state court. The state trial court denied the petition, and the OCCA affirmed the denial of the petition. In April 2017, Hill filed this petition under 28 U.S.C. § 2254. A magistrate judge recommended that the district court deny the petition. The district court adopted the recommendation and denied the petition. The district court also denied Hill's request for a COA. Hill now seeks a COA from this court.

**II**

To obtain a COA, Hill must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the district court denied Hill's claims on the merits, he "must demonstrate that reasonable jurists would find

3

the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As Hill is litigating pro se, we liberally construe his application for a COA. *See Hall v. Scott*, 292 F.3d 1264, 1266 (10th Cir. 2002).

Hill seeks a COA based on alleged (i) ineffective assistance of counsel at trial and on direct appeal, and (ii) insufficient evidence to support his convictions. Hill raised these issues before the OCCA, which held that none of them were meritorious. In review of the OCCA's rulings, we do not ask whether we believe the state court's determination was incorrect but rather "whether [the state court's] determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). We conclude that none of the OCCA's rulings were unreasonable. Because there are no debatable issues, a COA is not warranted.

*Ineffective assistance of counsel*

To establish that Bostick provided ineffective assistance of counsel, Hill must prove Bostick's performance was constitutionally deficient and that the deficient performance prejudiced Hill. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984). A "deficient" performance is one that falls "outside the wide range of professionally competent assistance." *Id*. "[P]rejudice" occurs when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Hill argues Bostick was ineffective in three ways. First, Hill alleges Bostick was ineffective by not calling Lewis to testify. Second, Hill believes Bostick should

4

have objected to the State's closing argument and the State's characterization of the evidence. And third, Hill contends Bostick should have included a challenge to the State's closing argument as an issue on direct appeal. None of these alleged instances of ineffectiveness merit a COA.

First, in part because "trial counsel's informed decision not to call a particular witness is a tactical decision and thus a matter of discretion for counsel," *Newmiller v. Raemisch*, 877 F.3d 1178, 1198 (10th Cir. 2017), Bostick's performance was not deficient simply because he did not call Lewis to testify. To be clear, Bostick attempted to introduce Lewis' interview with the Ada Police Department—in lieu of having Lewis testify live—but the state trial court ruled that the recorded interview was inadmissible hearsay. *See* App. at 407. After that, Bostick did not call Lewis for live testimony.

Hill argues that if Lewis had testified, she could have stated that she caused some of T.H.'s injuries by dropping and catching T.H. in the shower, and by bumping T.H.'s head on the doorframe. However, at her sentencing hearing on July 30, 2013—less than a month before Hill's trial—Lewis testified that the story about hitting T.H.'s head on the doorframe did not actually occur in the way she told the medical professionals at the Ada medical center. App. at 308. In fact, Lewis indicated that Hill may have been the one holding T.H. when T.H.'s head hit the doorframe. *Id.* at 299–308. Lewis also testified that on one occasion Hill was caring for T.H. by himself when T.H. rolled off the bed. *Id.* at 299–304.

5

The prospect of potentially damaging testimony is among the reasons that "[s]trategic or tactical decisions on the part of counsel are presumed correct unless they were completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001) (citations and quotations omitted). Bostick's decision to not call Lewis as a witness provides no basis for a claim of deficient performance.[1]

Hill also argues Bostick was ineffective during closing arguments because Bostick did not object when the prosecutor stated:

> [Hill] must present something to you in the form of evidence [that Lewis was solely responsible for any abuse to T.H.,] and simply showing the conviction for Stacie Lewis is not in itself evidence of what [Lewis] did to [T.H.].

App. at 389. Hill argues this statement improperly shifted the burden of proof and required him to prove an element of the crime. Yet, as the magistrate judge noted, it is not clear whether a prosecutor's closing argument that identifies deficiencies in the defense improperly shifts the burden of proof. *See* App. at 409–10 (citing *Sanders v. State*, 358 P.3d 280, 286 (Okla. Crim. App. 2015)); *see also United States v. Rahseparian*, 231 F.3d 1267, 1273 (10th Cir. 2000) ("We have consistently held that a prosecutor may comment on the lack of evidence in a case."). Even if the statement

---

[1] Hill seeks an evidentiary hearing in hopes of having Lewis testify in the way Hill wanted Lewis to testify at his trial. Aplt. Br. at 12. As the broad sweep of discretion in trial strategy forecloses Hill's claim that his trial counsel was ineffective for not calling Lewis at trial, Hill was not entitled to an evidentiary hearing on the matter. *See United States v. Stine*, 719 F. App'x 834 at *3 (10th Cir. 2018).

did misstate the State's burden, the trial court twice clarified for the jury that the State had the burden of proving Hill's guilt. App. at 410–12 (citing the jury instructions). When a court instructs a jury on the proper law, any prior misstatement will "not override the jury's instructions on the presumption of innocence and burden of proof." *Mitchell v. State*, 270 P.3d 160, 189 (Okla. Crim. App. 2011).

Later in the closing argument, the prosecutor stated:

> Look at his statement and consider how he spoke about his daughter. He didn't refer to her as [T.H.] once. He just referred to her as "the baby." These are things that show willful or malicious acts to not protect your child.
> . . .
> [Lewis is] working 11 hours a day. She's convicted of child neglect. How about Mr. Hill? Is he—is he responsible [for] child neglect? Mr. Hill [lived in] the same house. He's not working. Stacie is putting in all the hours. That's child neglect. That's willful and that's malicious.

App. at 434. Hill argues that this misstated the proper definition of willful and malicious conduct. The record belies this point and indicates the prosecutor was merely exercising his "right to discuss fully from [his] standpoint the evidence and the inferences and deductions arising from it." *Kennamer v. State*, 57 P.2d 646, 664 (Okla. Crim. App. 1936); *see also United States v. Gomez-Olivas*, 897 F.2d 500, 503 (10th Cir. 1990) (noting "the prosecutor is allowed considerable latitude in responding to defense arguments, commenting on the evidence, and arguing inferences therefrom"). And even if the prosecutor was misstating the law, the trial court cured any confusion by subsequently reciting for the jury the proper definitions of willful and malicious. *See* App. at 412.

7

Finally, Hill argues that Bostick was ineffective for failing to object when the prosecutor in closing argument stated the "evidence shows [T.H.] wasn't getting food." *Id.* But Dr. Wilson testified that three-month-old T.H. weighed only 8.8 pounds when she arrived at the medical center, and the State's expert testified T.H. exhibited failure to thrive symptoms. The prosecutor was free to present his view of that evidence and offer potential inferences therefrom. *See Kennamer*, 57 P.2d at 664. Bostick was not deficient in declining to object to the closing argument, and any failure to object did not prejudice Hill.[2] *See Hanson v. Sherrod*, 797 F.3d 810, 837 (10th Cir. 2015).

### Sufficiency of the evidence

Under the Due Process Clause, the evidence against a criminal defendant must be strong enough that, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). As applied, the evidence must be sufficient to convict Hill of both felony child abuse by failure to protect and felony child neglect. Specifically, to convict Hill of felony child abuse by failure to protect, the State had to prove that Hill: (i) was responsible for T.H.'s health, safety or welfare; and (ii) willfully or

---

[2] To the extent Hill argues Bostick was ineffective by not raising the issues with the prosecutors' closing argument on direct appeal that argument fails, given that the closing was either not improper or cured by the trial court's jury instructions.

maliciously;[3] (iii) failed to protect T.H. from harm; (iv) while T.H. was under the age of 18. *See* Okla. Stat. tit. 21, § 843.5(A). To convict Hill of felony child neglect, the State had to prove that Hill: (i) was responsible for T.H.'s health, safety, or welfare; and (ii) willfully or maliciously; (iii) failed to provide T.H. with; (iv) adequate nurturance, food, and medical care; (v) while T.H. was under the age of 18. *See* Okla. Stat. tit. 21, § 843.5(C).

Hill made an insufficiency of the evidence argument on direct appeal. The OCCA held that "[w]here, as here, defendants have exclusive care of a child during a period where the child was injured, and the explanation of events is incompatible with the medical evidence, sufficient evidence supports the convictions." App. at 102. A federal habeas court can only "overturn a state court decision rejecting a sufficiency of the evidence challenge . . . if the state court decision was objectively unreasonable." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quotation omitted).

Here, the OCCA's conclusion was not objectively unreasonable. T.H. arrived at the medical center on June 5, 2012, with signs of failure to thrive, two broken bones in her leg, three broken ribs, severe head trauma, and multi-layer retinal hemorrhages involving both eyes. The failure to thrive and myriad injuries occurred while Hill was a primary caretaker for T.H. That the OCCA was reasonable in

---

[3] "The term 'willfully' . . . implies simply a purpose or willingness to commit the act or the omission referred to[, and] . . . does not require any intent to violate law, or to injure another, or to acquire any advantage." Okla. Stat. tit. 21, § 92. "The terms 'malice' and 'maliciously' . . . import a wish to vex, annoy or injure another person." Okla. Stat. tit. 21, § 95.

concluding "sufficient evidence supports the convictions," App. at 102, was not

"debatable," *Slack*, 529 U.S. at 484.

## III

We therefore **DENY** Hill's application for a COA and dismiss this matter.

Entered for the Court


Mary Beck Briscoe
Circuit Judge