**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

NOE TORRES,

     Petitioner - Appellant,

v.

DWAYNE SANTISTEVAN; GEORGE
STEPHENSON; ATTORNEY GENERAL
OF THE STATE OF NEW MEXICO,

     Respondents - Appellees.

No. 20-2029
(D.C. No. 2:19-CV-00209-KWR-JHR)
(D. N.M.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**\*
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Pro se prisoner Noe Torres is serving a sentence of life plus nineteen-and-a-half

years for, among other crimes, first-degree murder. He seeks a certificate of appealability

(COA) to challenge the district court's denial of his 28 U.S.C. § 2254 habeas petition. As

explained below, we deny a COA and dismiss this appeal.

---

    \* This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

On September 14, 2005, Ruben Perez was involved in an altercation with Orlando Salas at their high school in New Mexico. Orlando had two older brothers, Demetrio and Edward. *State v. Torres*, 413 P.3d 467, 472 (N.M. 2018).[1]

After the altercation, "[i]n the early hours of September 15," Orlando and Demetrio "said they wanted to get that 'sewer rat,' referring to Ruben." *Id.* Demetrio and a friend, David, then drove to the apartment complex where Ruben lived to "'do a mission.'" *Id.*

At the same time, Torres and Edward drove to the same apartment complex with two women. Torres and Edward exited the vehicle, approached Demetrio and David, shook hands with them, and disappeared from the women's view.

Gunshots followed. Specifically, nine shots were fired at very close range through a window into the bedroom Ruben shared with his ten-year-old brother, Carlos. Bullets struck Carlos, killing him.

Demetrio and David fled to a friend's house near the apartment complex.

> Demetrio was described as "on an adrenaline rush" and holding a gun. Demetrio said, "We just went and blasted nine rounds into that sewer rat's house, pow, pow, pow, pow." Demetrio told [a woman at the house] not to touch him because he had gunpowder residue on him. [The house's owner] turned on his police scanner, and they heard that a child had been shot and that police were looking for a [vehicle that matched Demetrio's vehicle]. [The house's owner] heard someone say, "Oh we got the wrong guy."

*Id.* at 472-73 (ellipsis omitted).

---

[1] Except for Petitioner-Appellant Torres, we follow the New Mexico Supreme Court's use of first names to recount the background of this case.

Meanwhile, Torres and Edward had run back to their vehicle.

> When [Torres] got to the car he was described as excited and smelling like "burned matches." [Torres] got into the driver's seat . . . , Edward got into the front passenger seat, the [women] got into the back seat, and they "took off." When Edward received a phone call, [Torres] turned up the radio volume. [One of the women] heard Edward say to [Torres], "We didn't get him. We got the little boy," and then heard [Torres] reply, "Are you sure it was the little boy?"

*Id.* at 473. The next day, Torres fled to Mexico. Police obtained a warrant for his arrest.

Torres "was arrested more than six years later in Chihuahua, Mexico, and after another six months was brought back to New Mexico for trial." *Id.*

After a trial in March 2015, a jury found Torres "guilty of shooting at a dwelling resulting in death or great bodily harm to Carlos, first-degree murder of Carlos, attempted first-degree murder of Ruben, conspiracy to commit first-degree murder, conspiracy to shoot at a dwelling, transportation of a firearm by a felon, and intimidation of a witness." *Id.* The trial court sentenced Torres to life imprisonment plus thirty-one-and-a-half years.

On appeal, the New Mexico Supreme Court affirmed Torres's convictions of first-degree murder, attempted first-degree murder, conspiracy to commit first-degree murder, and transporting a firearm. But the court reversed on double-jeopardy grounds his convictions for shooting at a dwelling and conspiring to shoot at a dwelling. It also vacated a habitual-offender sentencing enhancement.[2] On remand, the trial court resentenced Torres to life imprisonment plus nineteen-and-a-half years, with credit for time served.

---

[2] Torres did not appeal the witness intimidation conviction.

Torres unsuccessfully sought state postconviction relief and then filed the instant § 2254 petition in federal district court. A magistrate judge recommended denying the habeas petition, and Torres timely objected. A district judge adopted the recommendation, reviewing some of Torres's objections de novo and concluding that others were waived due to a lack of specificity. The district judge denied a COA.

## DISCUSSION
## I. Standards of Review

To appeal the denial of a § 2254 petition, a petitioner must obtain a COA by "showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). When the district court has rejected a habeas claim on procedural grounds, the petitioner must show both (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Our consideration of a habeas petitioner's request for a COA must incorporate the Antiterrorism and Effective Death Penalty Act's (AEDPA's) "deferential treatment of state court decisions." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Under AEDPA, when a state court has adjudicated the merits of a claim, a federal court may grant habeas relief only if that state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

4

Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). We therefore "look to the District Court's application of AEDPA to [Torre's] constitutional claims and ask whether that resolution was debatable among jurists of reason." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

## II. Sufficiency of the Evidence

Torres claims that the prosecution failed to present sufficient evidence to support his convictions for first-degree murder, attempted first-degree murder, conspiracy to commit first-degree murder, and unlawful transportation of a firearm. We conclude that a COA is not warranted.

In resolving a sufficiency-of-the-evidence claim, a court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In other words, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). Further, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge" unless "the state court decision was objectively unreasonable." *Id.* (internal quotation marks omitted).

## A.     Murder, Attempted Murder, & Conspiracy

The New Mexico Supreme Court held that "there was sufficient evidence to support the jury's finding that [Torres] had the requisite deliberate intent to kill required

5

for his convictions of first-degree murder and attempted first-degree murder." *Torres*, 413 P.3d at 480. In regard to his conspiracy conviction, the Court stated that "a reasonable, or reasoning, jury could find that [Torres] was part of an agreement with one or more others to murder Ruben." *Id.* For all three crimes, the Court cited evidence showing that Torres had assisted in the plan to kill Ruben, participated in the actual attempt to kill him, and afterward questioned whether the wrong person had been killed.

The district court discussed the New Mexico Supreme Court's reasoning and explained that Torres's contrary trial testimony merely presented a conflict in the evidence, which the jury was capable of resolving. *See United States v. Poe*, 556 F.3d 1113, 1125 (10th Cir. 2009) (observing that when reviewing the sufficiency of the evidence, a court does "not weigh conflicting evidence or consider witness credibility, as that duty is delegated exclusively to the jury" (internal quotation marks omitted)).

In his COA application, Torres argues that the district court "Erred[ ] in the Understanding of the facts, recitation and interpretation of the record, failed to consider . . . Verbatim Ground I from Direct Appeal; All of which shows and demonstrates Actual Judicial Bias, Miscarriage of Justice, Actual Innocence." Aplt. Combined Opening Br. & Appl. for COA at 8. But he does not explain in any detail how the district's court's decision is debatable with respect to whether the New Mexico Supreme Court unreasonably applied *Jackson* in rejecting his sufficiency-of-the-evidence claim. His summary assertions that the trial judge "manipulate[d]" the jury and "allowed uncredible 'witnesses' to perjur[e] themselves time and time again," *id.*, are insufficient. *See Burrell v. Armijo*, 603 F.3d 825, 835 (10th Cir. 2010) ("[O]n appeal, issues nominally raised but

6

inadequately briefed need not be considered."). Although we must liberally construe

Torres's pro se filings, we do not act as his advocate, constructing arguments and

searching the record. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840

(10th Cir. 2005).

**B.      Transporting a Firearm**

The New Mexico Supreme Court held there was sufficient evidence that Torres

knowingly transported a firearm because he testified at trial "that on September 14, 2005,

he was driving Edward around town and was aware that Edward had brought a gun into

the car." *Torres*, 413 P.3d at 481. In the district court, Torres disputed testifying that he

knew Edward had a gun in the car. The district court examined Torres's testimony on the

subject, noting that his testimony described driving Edward around on the 14th and being

aware that Edward had a gun. Indeed, Torres testified he had been told that Edward had

a gun, he thought Edward acted like he had a gun, and he told Edward he did not want to

be around the gun.

The district court concluded that Torres's testimony did not rebut the New Mexico

Supreme Court's characterization of the facts. *See Littlejohn v. Trammell*, 704 F.3d 817,

825 (10th Cir. 2013) ("Factual findings of the state court are presumed correct unless the

applicant rebuts that presumption by clear and convincing evidence." (internal quotation

marks omitted)).

In his COA application, Torres argues that the district judge "chose to throw her

own assumption on the testimony she reviewed; . . . erred in her recitation of the facts[;]

and demonstrated her own Judicially biased opinion." Aplt. Combined Opening Br. &

7

Appl. for COA at 7. But he has not cited any evidence to rebut the presumption that the New Mexico Supreme Court correctly characterized his testimony as showing his awareness that Edward had a gun in the car.

## III. Double Jeopardy

Torres next claims that the New Mexico Supreme Court applied the wrong remedy when it concluded that double jeopardy barred his convictions for shooting at a dwelling and conspiring to shoot at a dwelling. According to Torres, *all* of his convictions should have been vacated based on just those two double-jeopardy bars. The district court rejected the claim, noting that the remedy for a double-jeopardy violation is to vacate one of the convictions subject to a double-jeopardy bar. *See Rutledge v. United States*, 517 U.S. 292, 297, 307 (1996) (indicating that double-jeopardy addresses "whether a defendant has been punished twice for the 'same offense,'" and concluding that because conspiracy was a lesser included offense of operating a continuing criminal enterprise, "one of [the defendant's] convictions, as well as its concurrent sentence, [wa]s unauthorized punishment for a separate offense and [had to] be vacated" (brackets and internal quotation marks omitted)); *Ball v. United States*, 470 U.S. 856, 864 (1985) (explaining that "the only remedy" for a double-jeopardy violation is "to vacate one of the underlying convictions").

The district court's decision is not debatable.

## IV. Witness Cross-Examination

At trial, Detective Keith Farkas testified "that the evidence collected from the vehicles, consisting of fingerprints, hair, and gunshot residue, produced no conclusive

8

results as to the vehicles' occupants." *Torres*, 413 P.3d at 482. Torres sought to cross-examine him about being fired from the police department for allegedly stealing a laptop computer from work in 2006. Torres "argued that the evidence was admissible because it went to Farkas' credibility and trustworthiness." *Id.* at 481. The trial court did not allow the cross-examination, and the New Mexico Supreme Court found no abuse of discretion, stating that "[h]is testimony provided very little, if any, incriminating evidence against [Torres]." *Id.* at 482.

In his habeas petition, Torres claimed that his inability to cross-examine Farkas about the termination violated his Sixth and Fourteenth Amendment rights. Torres surmised that the laptop might have had recordings of witness interrogations showing that the "witnesses were persuaded to perjure themselves." R., Vol. I at 26.

The magistrate judge recommended denying the claim because Torres had asserted a general attack on witness credibility, which is not cognizable under the Sixth Amendment, *see Davis v. Alaska*, 415 U.S. 308, 316, 321 (1974) (indicating that impeaching a witness's general credibility is not constitutionally protected), and had identified no Fourteenth Amendment violation, *see Lopez v. Trani*, 628 F.3d 1228, 1231 (10th Cir. 2010) (stating that "evidentiary rulings by the state court . . . will not [be] disturb[ed] unless the court's error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process"). The district judge found that Torres had not preserved the issue for review because he objected on only a conclusory basis that the magistrate judge was biased and that his rights were violated.

9

We conclude that a COA is not warranted on this claim. Torres's objections to the magistrate judge's recommendation were too conclusory to preserve review of his habeas claim. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996) (requiring "an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute").

## V. Shackling

On direct appeal, Torres argued that the trial court erred by allowing him to be shackled to the counsel table without first conducting a hearing. Because Torres did not object to the shackling or request a hearing, the New Mexico Supreme Court reviewed for only fundamental error and found none, as there was no indication the shackles were ever visible to the jury. Further, the Court noted the trial judge had acted to ensure that the jury did not see the shackles by removing them outside the jury's presence so Torres could testify.

The magistrate judge determined there was no due-process violation because Torres did not allege either that the jury saw the shackles, *see Deck v. Missouri*, 544 U.S. 622, 629 (2005) ("prohibit[ing] the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial"), or that the shackles interfered with his defense, *see id.* at 631 (observing that shackles "can interfere with a defendant's ability to participate in his own defense, say, by freely choosing whether to take the witness stand on his own behalf").

10

The district judge found that Torres had waived any objection to the magistrate judge's determination by merely urging the court to review the record. We conclude that a COA is not warranted. *See 2121 E. 30th St.*, 73 F.3d at 1060 (requiring "an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute").

## VI.  Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel requires a showing that defense "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In his state postconviction petition, Torres claimed that his trial counsel was ineffective because she (1) waived his right to testify before the grand jury; and (2) failed to call character witnesses to testify that he is not a violent person. The postconviction court rejected the claim, finding neither deficient performance nor prejudice.

Torres reasserted the claim in his federal habeas petition. The district judge concluded that Torres had not shown deficient performance or any resulting prejudice.

Because the state postconviction court rejected Torres's claim on the merits, we ask only whether its "application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Habeas relief is available only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" *Strickland*. *Id.* at 102.

11

In his COA application, Torres does not address defense counsel's decisions to waive his grand jury testimony and not call character witnesses. Instead, Torres complains only that she "took . . . cash and purposely did not provide [an] investigator and expert witness." Aplt. Combined Opening Br. & Appl. for COA at 12. We do not address "issues nominally raised but inadequately briefed." *Burrell*, 603 F.3d at 835.

We deny a COA as to ineffective assistance of counsel.

## VII. The Interstate Agreement on Detainers (IAD)

The IAD is a uniform law enacted by forty-eight states, the District of Columbia, and the federal government that provides "procedures for lodging and executing a detainer, i.e., a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Alabama v.. Bozeman*, 533 U.S. 146, 148 (2001). Among other things, the IAD "gives a State the right to obtain a prisoner for purposes of trial, in which case the State . . . must try the prisoner within 120 days of his arrival." *Id.* at 151.

In his state postconviction petition, Torres argued that he was not timely brought to trial after being extradited to New Mexico. The postconviction court summarily denied the claim.

The district court determined that Torres's IAD claim was not implicated by his extradition from Mexico and was not cognizable under § 2254. In his request for a COA, Torres contends that the IAD applies because U.S. Marshalls took him from Mexico to Texas before turning him over to New Mexico authorities. He also contends that if he

12

had been brought to trial in New Mexico within 120 days, he would not have been subjected to the "[b]otched proceedings" he has claimed in his habeas petition. Aplt. Combined Opening Br. & Appl. for COA at 13.

We deny a COA. Even if the IAD applied here, "rights created by the IAD are statutory, not fundamental, constitutional, or jurisdictional in nature." *Knox v. Wyo. Dep't of Corr.*, 34 F.3d 964, 967 (10th Cir. 1994) (internal quotation marks omitted). While "special circumstances" may exist to permit an IAD collateral attack, Torres has not alleged any. *See id.*

## VIII.  Replacement Counsel

In his state postconviction petition, Torres argued that the trial judge violated his rights to effective assistance of counsel and due process by refusing to appoint a replacement public defender after the judge learned his initial public defender had unsuccessfully represented Demetrio Salas. According to Torres, the judge's refusal required him to later hire his own defense attorney, "who later proved to be ineffective." R., Vol. I at 126. The state court summarily denied the claim.

The magistrate judge rejected the claim, stating that it raised only an issue of state law. The district judge deemed the issue waived due to an inadequate objection.

We conclude that a COA is not warranted. Although Torres identified federal constitutional grounds for relief, we are aware of no U.S. Supreme Court decision extending either of those grounds to the circumstances of which Torres complains. *See* 28 U.S.C. § 2254(d)(1) (requiring that the state court decision be either contrary to, or an unreasonable application of, "clearly established Federal law, as determined by the

13

Supreme Court of the United States"); *Fairchild v. Trammell*, 784 F.3d 702, 710 (10th Cir. 2015) ("Federal courts may not extract clearly established law from the general legal principles developed in factually distinct contexts, and Supreme Court holdings must be construed narrowly and consist only of something akin to on-point holdings." (citation and internal quotation marks omitted)).

## IX.  Motion to Dismiss Indictment

In his state postconviction petition, Torres complained that the trial court should have dismissed his indictment because the District Attorney's investigator misled the grand jury.  Specifically, the investigator testified to the grand jury that .22 caliber revolvers hold only six bullets.  This testimony was misleading, Torres claimed, because it suggested more than one shooter fired the nine rounds into Ruben Perez's window.  Also, the investigator had purportedly told Mexican officials he recovered a nine-shot .22 revolver during the investigation.

The magistrate judge rejected Torres's claim on the basis that state law issues are not cognizable grounds for federal habeas relief, *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), and that Torres's claim was mooted by his guilty verdicts, *see United States v. Mechanik*, 475 U.S. 66, 70 (1986) ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt.").  The district judge concluded that Torres had waived his objection to those determinations by arguing only that he is entitled to relief "under actual judicial bias, miscarriage of

14

justice, actual innocence postconviction remedies rules/standard." R., Vol. I at 639 (internal quotation marks omitted).

In his request for a COA, Torres complains that his requests for original grand jury transcripts have been denied, he repeats the general objection he lodged in the district court, and he contends that the investigator acted maliciously. None of these points addresses whether a reasonable jurist could debate the district court's determination that Torres had waived his claim. We deny a COA.

## X.  Pretrial Detention

In his state postconviction petition, Torres claimed that his pretrial detention in a New Mexico "level 6 disciplinary facility," R., Vol. I at 128, amounted to cruel and unusual punishment and interfered with his ability to communicate with defense counsel by limiting his telephone and visitation privileges. The state court summarily denied the claim.

The district court rejected the claim, explaining that restraints on a detainee's liberty can be imposed if the detainee poses flight or security risks. Further, the district court noted, Torres was detained in a maximum security facility because he had fled to Mexico and had a prior criminal history that included violent offenses. Also, there was a dispute in the trial court as to whether Torres's privileges had been restricted, as the District Attorney denied ordering any such restrictions, and defense counsel indicated that while prison restrictions had caused delays in her representation, she had some access to Torres. Based on these circumstances, the district court found no constitutional violation.

15

The Sixth Amendment "right to counsel plays a crucial role in the adversarial system . . . , since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution." *Strickland*, 466 U.S. at 685 (internal quotation marks omitted). But "[n]ot every restriction on counsel's time or opportunity to investigate or consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). "[W]hen an institutional restriction infringes a specific constitutional guarantee . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Torres contends that "the facility denied counsel to confer with me." Aplt. Combined Opening Br. & Appl. for COA at 16. But he does not address the factual dispute in the trial court regarding the extent of any interference with his ability to confer with defense counsel. Nor does he address the reasonableness of prison restrictions in light of his prior flight to Mexico or his prior criminal offenses. In short, Torres has not demonstrated that the state postconviction court's denial of his Sixth Amendment claim was contrary to, or an unreasonable application of, *Bell*.

## XI.  Pleading Amendment

In his state postconviction petition, Torres claimed that "th[e] court ha[d] withheld all discovery and proceedings from [him] . . . [and] ha[d] violated [his] due process rights to know the accusations against [him] . . . [in order] to sabotage [his] appeals process." R., Vol. I at 130.  Consequently, he prospectively requested leave to amend "for any and all additional issues [he] [might] find once [he] [was] properly supplied with all discovery, tape and copied proceedings, ever filed in this case." *Id.*  The state court summarily denied relief.

In his federal habeas petition, Torres prospectively requested leave to amend if he received the discovery items he claimed had been withheld in state court.  The magistrate judge recommended the request be denied as premature.  Torres objected, but did not address the magistrate's recommendation.  The district judge declared Torres's objection waived.

In his COA request, Torres argues that his request to amend was not premature because there was a violation of his rights to "know the accusation[s] against [him]" and to not have exculpatory evidence withheld.  Aplt. Combined Opening Br. & Appl. for COA at 17.  We conclude that the district judge correctly characterized Torres's objection as non-responsive.  Moreover, Torres's federal habeas petition does not appear to advance a claim for withheld discovery.

## CONCLUSION

We deny a COA and dismiss this appeal.

Entered for the Court
Per Curiam